22-1796

---

IN THE

# UNITED STATES COURT OF APPEALS

## FOR THE EIGHTH CIRCUIT

---

ANASTASIA WULLSCHLEGER, et al.,

Plaintiffs-Appellants,

v.

ROYAL CANIN U.S.A. INC., et al.,

Defendants-Appellees.

---

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MISSOURI-WESTERN DIVISION,
NO. 4:19-CV-00235-CV-W-GAF

---

## BRIEF OF APPELLANTS

JAMES P. FRICKLETON  MO #31178
Bartimus Frickleton Robertson Rader, PC
4000 W. 114th Street, Suite 310
Leawood, KS  66211
(913) 266-2300 / (913) 266-2366 (fax)
jimf@bflawfirm.com

DANIEL R. SHULMAN (*pro hac vice*)
Shulman & Buske PLLC
126 North Third Street, Suite 402
Minneapolis, MN 55401
(612) 870-7410 / (612) 870-7462 (fax)
dan@shulmanbuske.com

MICHAEL P. MORRILL (*pro hac vice*)
Pope Mcglamry, P.C.
3391 Peachtree Road NE, Suite 300
Atlanta, GA 30326
(404) 523-7706 / (404) 524-1648 (fax)
mikemorrill@pmkm.com

**ATTORNEYS FOR APPELLANTS**

Appellate Case: 22-1796    Page: 1    Date Filed: 05/31/2022 Entry ID: 5162683

## SUMMARY OF THE CASE

This is an action for violation of the Missouri Merchandising Practices Act, Mo. Rev. Stat. §§ 407.020, 407.025, resulting from the Defendants-Appellees' sale and marketing of dog and cat food requiring a veterinarian's prescription as a precondition to consumer purchase, although such a prescription is not legally required. Plaintiffs-Appellants are two Missouri residents who purchased Defendants-Appellees' prescription pet food. The prescription requirement misled reasonable consumers into paying a premium price in the mistaken belief that the pet food contained a drug or medicine, could legally be sold only by prescription, and had been reviewed and approved by an appropriate government authority. The Amended Complaint also asserted that Defendants-Appellees sold and marketed their prescription pet food as part of a combination and conspiracy to fix, raise, peg, or stabilize prices. The District Court granted a defense motion to dismiss because it concluded that Plaintiffs-Appellants had suffered no injury from Defendants-Appellees' alleged violations by continuing to buy the products.

Oral argument of 20 minutes is requested because the District Court's decision is directly contrary to three reported appellate court decisions upholding similar claims under comparable Illinois, California, and Kansas unfair trade practices statutes.

Appellate Case: 22-1796     Page: 2     Date Filed: 05/31/2022 Entry ID: 5162683

## CORPORATE DISCLOSURE STATEMENT

Appellant is not a corporation and does not require a corporate disclosure.

3

# TABLE OF CONTENTS

SUMMARY OF THE CASE..................................................................................2

CORPORATE DISCLOSURE STATEMENT.....................................................3

TABLE OF CONTENTS ...................................................................................4

TABLE OF AUTHORITIES ..............................................................................6

JURISDICTIONAL STATEMENT .....................................................................9

STATEMENT OF THE ISSUES.......................................................................10

STATEMENT OF THE CASE ..........................................................................12

SUMMARY OF THE ARGUMENT ..................................................................24

ARGUMENT ..................................................................................................27

I. THE DISTRICT COURT ERRED IN DISMISSING THE MMPA CLAIM
FOR LACK OF PROOF OF CAUSATION OF PLAINTIFFS' INJURIES...27

   A. Scope of Review..................................................................................27

   B. The Prescription Pet Food Cases......................................................28

   C. The District Court's Erroneous Decision in This Case......................30

II. THE DISTRICT COURT ERRED IN DISMISSING THE MISSOURI
COMMON LAW CIVIL CONSPIRACY CLAIM .............................................43

   A. Scope of Review..................................................................................43

Appellate Case: 22-1796    Page: 4    Date Filed: 05/31/2022 Entry ID: 5162683

**B. Missouri Civil Conspiracy Law** ...................................................**43**

**C. Plaintiffs Meet the Elements of Pleading Civil Conspiracy**.......................**44**

**D. The Amended Complaint Sufficiently Pleads a Meeting of the Minds** ....**45**

**CONCLUSION**...............................................................................**54**

**CERTIFICATE OF COMPLIANCE** ................................................**56**

**CERTIFICATE OF SERVICE** .......................................................**58**

Appellate Case: 22-1796   Page: 5   Date Filed: 05/31/2022 Entry ID: 5162683

# TABLE OF AUTHORITIES

## CASES

*8000 Maryland v. Huntleigh Financial Serv.*, 292 S.W.3d 439 (Mo. App. 2009)..42

*American Tobacco Co. v. United States*, 328 U.S. 781 (1946) .......................... 9, 49

*Ashcroft v. Iqbal* , 556 U.S. 662 (2009)...................................................................26

*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007)................................ 24, 26, 50

*Braden v. Wal-Mart Stores, Inc.*, 588 F.3d 585 (8th Cir. 2009).............................27

*Bratton v. Hershey Co.*, No. 2:16-cv-4322-C-NKL, 2018 WL 934899 (W.D. Mo.

    Feb. 16, 2018) .........................................................................................39

*Conway v. CitiMortgage, Inc.*, 438 S.W.3d 410 (Mo. banc 2014).................. 37, 41

*East v. Minnehaha Cnty.*, 986 F.3d 816 (8th Cir. 2021)..........................................26

*Huch v. Charter Communications, Inc.*, 290 S.W.3d 721 (Mo. 2009)....................37

*In re Bisphenol-A (BPA) Polycarbonate Plastic Products Liability Litigation*,

    MDL No. 1967, 2011 WL 6740338 (W.D. Mo. Dec. 22. 2011) ........................38

*In re High Fructose Corn Syrup Antitrust Lit.*, 295 F.3d 651 (7th Cir. 2002) ........47

*In re Musical Instruments & Equip. Antitrust Litig.*, 798 F.3d 1186 (9th Cir. 2015)

    .................................................................................................47

*Interstate Circuit, Inc. v. United States*, 306 U.S. 208 (1939) .......................... 9, 48

*Kucharski-Berger v. Hill's Pet Nutrition, Inc*., 494 P.3d 283 (Kan. Ct. App. 2021)

    ................................................................................... passim

6

*McCall v. Monro Muffler Brake, Inc*., No. 10–269, 2013 WL 1282306 (E.D. Mo. Mar. 27, 2013) ................................................................................40

*Moore v. Mars Petcare US, Inc*., 820 F. App'x 573 (9th Cir. 2020)............... 50, 53

*Moore v. Mars Petcare US, Inc.*, 966 F. 1007 (9th Cir. 2020)....................... passim

*Oak Bluff Partners, Inc. v. Meyer*, 3 S.W.3d 777 (Mo. 1999) ...............................42

*Owen v. General Motors Corp*., 533 F.3d 913 (8th Cir. 2008) ........................ 39, 40

*Ports Petroleum Co. v. Nixon* , 37 S.W.3d 237 (Mo. banc 2001) ...........................37

*Rowles v. Curators of the Univ. of Mo.*, 983 F.3d 345 (8th Cir. 2020) ..................27

*Scheuer v. Rhodes*, 416 U. S. 232 (1974) ...............................................................50

*Schulte v. Conopco, Inc*., 997 F.3d 823 (8th Cir. 2021) ..........................................37

*Starr v. Baca*, 652 F.3d 1202  (9th Cir. 2011) ........................................................36

*State ex rel. Coca-Cola Co. v. Nixon*, 249 S.W.3d 855 (Mo. 2008) ............... 37, 38

*Sunset Pools of St. Louis, Inc. v. Schaefer*, 869 S.W.2d 883(Mo. App. 1994) .......37

*United States v. Eppolito*, 543 F.3d 25 (2nd Cir. 2008) ..........................................37

*United States v. Williams*, 534 F.3d 980, (8th Cir. 2008)........................................48

*Vanzant v. Hill's Pet Nutrition, Inc.*, 934 F.3d 730 (7th Cir. 2019) ............... passim

*W. Blue Print Co. v. Roberts*, 367 S.W.3d 7 (Mo. 2012) ........................... 10, 42, 43

*Warmington v. Bd. of Regents of the Univ. of Minn*., 998 F.3d 789 (8th Cir. 2021) ................................................................................................ 26, 42

Appellate Case: 22-1796     Page: 7     Date Filed: 05/31/2022 Entry ID: 5162683

*Wullschleger v. Royal Canin U.S.A., Inc.*, 953 F.3d 519,(8th Cir. 2020), *cert. den.*

141 S. Ct. 621 (2020) ..................................................................................... 8, 11

**STATUTES**

28 U.S.C. § 1292 ....................................................................................................8

815 ILL. COMP. STAT. 505/1 *et seq.*..................................................................28

Cal. Bus. & Prof. Code § 17200 *et seq.*,..........................................................28

Cal. Bus. & Prof. Code § 17500, *et seq.*...........................................................28

Cal. Civ. Code § 1750, *et seq.*............................................................................28

K.S.A. 2020 Supp. 50-101 .................................................................................50

K.S.A. 2020 Supp. 50-112 .................................................................................50

K.S.A. Supp. § 50-626 *et seq.*...........................................................................28

Mo. Rev. Stat. § 407.025 ......................................................................................9

Mo. Rev. Stat. § 407.010 ......................................................................................9

Mo. Rev. Stat. § 407.020 ................................................................................ 9, 28

Mo. Rev. Stat., § 416.011 *et seq.* .....................................................................11

**RULES**

Fed. R. Civ. P. 12(b)(6)........................................................................................8

Fed. R. Civ. P. 9(b) .............................................................................................45

Appellate Case: 22-1796     Page: 8     Date Filed: 05/31/2022 Entry ID: 5162683

## JURISDICTIONAL STATEMENT

This Court has determined that federal question jurisdiction exists for this case because it arises under the federal Food, Drug, & Cosmetic Act ("FDCA"), inasmuch as the original complaint contained numerous references to the FDCA and its administration, although the complaint asserted claims only under Missouri state law. *Wullschleger v. Royal Canin U.S.A., Inc.*, 953 F.3d 519, 521-22 (8th Cir. 2020), *cert. den*. 141 S. Ct. 621 (2020).

This Court has jurisdiction because this is a timely appeal from a final judgment entered pursuant to an order granting a defense motion under Fed. R. Civ. P. 12(b)(6) for failure to state a claim. 28 U.S.C. § 1292.

The Order granting the motion to dismiss and Judgment were both entered on March 22, 2022. App. 47-58; R. Doc. 83, 84. The Notice of Appeal was filed on April 18, 2022. R. Doc. 85.

Appellate Case: 22-1796    Page: 9    Date Filed: 05/31/2022 Entry ID: 5162683

## STATEMENT OF THE ISSUES

**ISSUE I**: Did the trial court err in dismissing the claims of Plaintiffs-Appellants under the Missouri Merchandising Practices Act ("MMPA"), Mo. Rev. Stat. §§ 407.020, 407.025, on the ground that Plaintiffs-Appellants failed to show that they had suffered an ascertainable loss of money or property as a result of Defendants-Appellees' deception or other unfair practice in connection with the sale or advertisement of their so-called prescription pet food?

**MOST APPOSITE CASES & STATUTES**:

*Vanzant v. Hill's Pet Nutrition, Inc.*, 934 F.3d 730 (7th Cir. 2019).

*Moore v. Mars Petcare US, Inc.*, 966 F. 1007 (9th Cir. 2020).

*Kucharski-Berger v. Hill's Pet Nutrition , Inc.*, 494 P.3d 283 (Kan. Ct. App. 2021).

Missouri Merchandising Practices Act ("MMPA"), Mo. Rev. Stat. §§ 407.010, 407.020, 407.025; Add. at 12-20.

**ISSUE II**: Did the trial court err in holding that Plaintiffs-Appellants had failed to plead plausible facts establishing that Defendants-Appellants had participated in a civil conspiracy to fix or increase prices in connection with the marketing and sale of their so-called prescription pet food?

**MOST APPOSITE CASES & STATUTES**:

*Kucharski-Berger v. Hill's Pet Nutrition , Inc.*, 494 P.3d 283 (Kan. Ct. App. 2021).

*Interstate Circuit, Inc. v. United States*, 306 U.S. 208 (1939).

*American Tobacco Co. v. United States*, 328 U.S. 781 (1946).

Appellate Case: 22-1796    Page: 10    Date Filed: 05/31/2022 Entry ID: 5162683

*W. Blue Print Co. v. Roberts*, 367 S.W.3d 7 (Mo. 2012).

11

# STATEMENT OF THE CASE

## Procedural History

Plaintiffs-Appellants ("Plaintiffs") originally brought suit on February 8, 2019, in Jackson County, Missouri, Circuit Court. R. Doc. 1 at Exhibit ("Ex.") A. The Complaint, styled "Petition" under Missouri pleading practice, alleged violations of the MMPA and the Missouri Antitrust Law, Mo. Rev. Stat., §§ 416.011 *et seq. Id.* Claiming federal question subject matter jurisdiction, Defendants removed the case to the Western District of Missouri on March 26, 2019. *Id*. Plaintiffs moved to remand to state court. R. Doc. 26. The Court granted the motion to remand on June 13, 2019. R. Doc. 32. This Court, however, permitted an interlocutory appeal of the remand order and reversed, finding arising-under federal question subject matter jurisdiction based on the Petition's references to the FDCA and an FDA Compliance Policy Guide ("CPG") regarding pet foods asserting therapeutic claims. *Wullschleger v. Royal Canin U.S.A., Inc*., 953 F.3d 519, 521-22 (8th Cir. 2020), *cert. den*., 141 S.Ct. 62 (2020).

Following remand to the Western District of Missouri, Plaintiffs filed an Amended Complaint on November 11, 2020, asserting solely state law claims under the MMPA, and further alleging that Defendants committed their MMPA violations in furtherance of a civil price-fixing conspiracy with other manufacturers and resellers of prescription pet food. App. 39-43; R. Doc. 43.

Plaintiffs also requested the Court to decline supplemental jurisdiction over the Amended Complaint and remand the case to state court. R. Doc. 44. The Court denied the request to remand on May 21, 2021. R. Doc. 62.

On July 6, 2021, Defendants moved to dismiss the Amended Complaint for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6). R. Doc. 64. The Court granted the motion to dismiss and entered judgment on March 22, 2022. App. 47-58; R. Docs. 83, 84. Plaintiffs perfected their appeal on April 18, 2022. R. Doc. 85.

## Facts Relevant to Issues for Review

The facts relevant to this appeal consist of the allegations of the Amended Complaint and the characterization of those facts in the District Court's Order granting the motion to dismiss.

The material allegations of the Amended Complaint set forth (1) Defendants' use of a self-created, sham prescription requirement, which misleads reasonable consumers into paying an unjustified price premium for Prescription Pet Food; and (2) accomplishing this deception and price manipulation through a combination and conspiracy among themselves, their manufacturing competitor Hill's Pet Nutrition, Inc. ("Hill's), Defendant Royal Canin's parent or affiliated company Mars PetCare U.S., Inc. ("Mars"), PetSmart, Inc. ("PetSmart"), the nation's largest pet goods retailer, and a number of veterinary chains owned by Mars. App. 21-29; R. Doc. 43, *passim*.

Appellate Case: 22-1796   Page: 13   Date Filed: 05/31/2022 Entry ID: 5162683

## The Misleading Prescription Requirement

Material allegations in the Amended Complaint concerning the prescription requirement include the following:

- Defendants Royal Canin U.S.A., Inc. ("Royal Canin"), and Nestle Purina Petcare Company ("Purina") manufacture, market, and sell dog and cat food requiring a veterinarian's prescription as a prerequisite to purchase by consumers ("Prescription Pet Food"). Royal Canin has its principal place of business in Missouri, and Purina is a Missouri corporation. App. 17; R. Doc. 43 at ¶¶ 11, 12.

- Plaintiffs are individuals residing in Missouri who purchased Prescription Pet Food manufactured by Defendants. *Id*. at 17, ¶¶ 9, 10.[1]

- There is no legal requirement for a prescription in the sale of Prescription Pet Food. *Id*. at 15,24, 16, ¶¶ 2, 28, 35.

- Nonetheless, Defendants require all resellers to adhere to the prescription requirement in selling Prescription Pet Food to pet owners. *Id*. at 14-16, 22, 24, 28, 35-36, 39, 41, ¶¶ 1, 3, 6, 24, 29, 42, 66, 75, 81.

---

[1] The cited paragraph numbers from the Amended Complaint are the same in R. Doc. 42 and the Joint Appendix.

14

- Defendants' Prescription Pet Food and that of their competitor Hill's make health and disease claims on both packaging and print, media, and electronic marketing materials. *Id*. at16, 30-31, 33, ¶¶ 5, 50, 57.

- Defendants also make non-prescription pet food making similar health and disease claims with mostly similar ingredients, which they sell for substantially lower prices than their Prescription Pet Food. *Id*. at 16, 31, 33, ¶¶ 5, 51, 58. "The non-overlapping ingredients are not drugs and are not sufficient to justify one product being sold by prescription for a significantly higher price." *Id*. at 31, 33-34, ¶¶ 52, 59.

- The prescription requirement misleads reasonable pet owners, including Plaintiffs, into believing that Prescription Pet Food is "(a) a substance medically necessary to health; (b) a drug, medicine, or other controlled ingredient; (c) a substance that has been evaluated by the FDA as a drug; (d) a substance as to which the manufacturer's representations regarding intended uses and effects have been evaluated by the FDA; and (e) a substance legally required to be sold by prescription." *Id*. at 24, 24, ¶¶ 29, 62; *see* ¶¶ 1, 32.[2]

---

[2] ¶ 32: "Plaintiffs, as reasonable retail consumers, (a) understand the requirement for a prescription to mean that a governmental authority has sanctioned and controls the use and distribution of the product and has provided its required oversight and review; (b) associate prescription fulfillment with following doctor's

15

- Because of the misleading effect of the false prescription requirement, reasonable consumers, including Plaintiffs, have also been misled into paying "an unjustified price premium, in the absence of which they would not have purchased Prescription Pet Food, or would have paid a lower price." *Id*. at 36, ¶ 67; *see* ¶¶ 1, 30, 31, 38.

- Defendants have imposed the prescription requirement to induce pet owners to pay a price premium for Prescription Pet Food in order "to prey on the known propensity of consumers to love their pets and trust their vets." *Id*. at 16, ¶ 6; *see id*. at 25, ¶ 33.[3]

- Specifically, Plaintiff Anastasia Wullschleger "believed that the [Royal Canin] Prescription Pet Food was intended to treat specific disease and health problems of her dog; that it contained medicine of some sort; that there had been some type of regulatory oversight in its manufacture; and that her purchasing the Prescription Pet Food was substantially similar to the purchase of prescription drugs from a

---

orders; and (c) experience the prescribing and purchase of Prescription Pet Food in the exact same manner as an actual prescription drug for a dog or cat."

[3] "Plaintiffs, as reasonable consumers, humanize their pets. In marketing and selling Prescription Pet Food, Mars/Royal Canin, Purina, and their co-conspirators take advantage of and betray vulnerable pet owners concerned about the health of the family pet, and prey on the known propensities of Plaintiffs and others similarly situated to treat their pets as family."

16

pharmacy such as CVS." *Id*. at 30, ¶ 49. Plaintiff Brewer believed the same with regard to the Purina Prescription Pet Food she bought for her cat. *Id*. at 32-33, ¶ 56.

- When Plaintiffs purchased Prescription Pet Food, they knew from point of sale displays and were expressly told that they could not buy the food without first obtaining a veterinarian's prescription. *Id*. at 29-30, 32-33, ¶¶ 48-49, 55-56.

- Despite having been misled into paying an unjustified price premium prior to bringing suit, Plaintiffs Wullschleger and Brewer have continued to purchase Prescription Pet Food because of a reluctance to make an abrupt change in their pets' diets. *Id*. at 34, ¶ 62.

- Plaintiffs allege that Defendants have violated the MMPA, Mo. Rev. Stat. §§ 407.010 *et seq*. by engaging "in the act, use, and employment of deception, fraud, false pretense, false promise, misrepresentation, unfair practice, and the concealment, suppression, or omission of material fact in connection with the sale and advertisement of Royal Canin [and Purina] Prescription Pet Food in trade or commerce in the state of Missouri by misrepresenting and marketing and selling Prescription Pet Food through a knowingly deceptive, misleading, and self-imposed prescription requirement having no legal basis or

17

mandate." *Id*. at 39, 41, ¶¶ 75, 81. Plaintiffs have sustained injury by paying more for Prescription Pet Food than they would have paid in the absence of the violation. *Id*. at 40-41, ¶¶ 77, 83.

## The Price-fixing Combination and Conspiracy

The Amended Complaint also alleges that Defendants and others have engaged in a civil conspiracy under Missouri common law to perpetrate their violations of the MMPA, thereby making each Defendant jointly and severally liable for the damages caused by the conspiracy. Material allegations of the Amended Complaint regarding the civil conspiracy include the following:

- For at least the five years prior to the filing of the original Complaint, Defendants Royal Canin and Purina, together with their competitors Hill's, Mars, retailer PetSmart, and Mars's wholly-owned veterinary chains Banfield Pet Hospital ("Banfield"), BluePearl Vet, LLC ("Blue Pearl"), and VCA Inc. ("VCA") have been involved in a combination for the sale and marketing of Prescription Pet Food. *Id*. at 18-21, 27-19, ¶¶ 14-21, 39-47.

- The form of the combination has Mars subsidiary Banfield operating veterinary clinics prescribing only Royal Canin, Purina, and Hill's Prescription Pet Food in roughly 900 of PetSmart's 1,145 locations, including 18 of 31 in Missouri, while Mars subsidiaries Blue Pearl and

18

VCA do the same in approximately 850 nationwide free-standing pet clinics and hospitals, including at least seven in Missouri. *Id*. at 19-21, 25, 27-29, ¶¶ 15-19, 31, 39-47.

- At each of these locations, including those in Missouri, a pet owner must obtain and present a prescription from a veterinarian before being allowed to purchase Prescription Pet Food manufactured by Royal Canin, Purina, or Hill's. *Id*. at 25, ¶ 31.

- The three manufacturers—Royal Canin, Purina, and Hill's—have at least a 95 percent share of Prescription Pet Food sales in the United States and Missouri. *Id*. at 21, ¶ 21. Mars also employs 17 percent of all U.S. veterinarians in what is otherwise a highly fragmented industry. *Id*. at 21, 23-24, ¶¶ 21, 27.

- Significant barriers to entry in the Prescription Pet Food business have been an inducement to established firms to collude free from the fear of new competitors entering the business. The highly fragmented nature of the veterinarian business means that distribution costs for new manufacturers can be prohibitive in the absence of access to sales through "national pet superstore chains, such as PetSmart, Chewy, and Petco, which collectively sell roughly 60 percent or more of branded (non-private label) pet food and a higher share of Prescription Pet Food,

19

as well as alliances with major veterinary chains, such as Banfield, Blue Pearl, and VCA." *Id*. at 23-24, ¶ 27.

- Defendants' combination and conspiracy began in 1994 when PetSmart and Mars gained control of Banfield, at a time when Prescription Pet Food was marketed primarily by Hill's under the brand "Prescription Diet." *Id*. at 27, ¶¶ 39-40.

- By 2004, however, Hill's Prescription Diet products had become a "significant factor" in the pet food business, so as to pose a growing threat to Mars and its affiliated companies, such as Royal Canin. Although, as the majority owner of Banfield, and later as the sole owner, Mars has had the power to exclude Hill's from Banfield, Mars has chosen not to exercise that power. Instead, in March of 2005, Hill's entered into a "merchandising agreement" with PetSmart and Banfield, which Mars and PetSmart owned, to sell Hill's Prescription Pet Food in all PetSmart stores with an on-site Banfield pet hospital. Around the same time, Royal Canin entered the Prescription Pet Food business selling its own "Veterinary Diet" brand of Prescription Pet Food through Banfield and PetSmart locations. *Id*. at 27-29, ¶¶ 41-44.

- Approximately a year later, Mars allowed Purina to join this arrangement, with Purina selling its "Pro Plan Veterinary Diet" brand of

Prescription Pet Food through Banfield and PetSmart (the Rx prescription symbol appears in the brand name by extending the bottom of the second "r" in "veterinary" to intersect with tail of the "y."). *Id*. at 22, 29, ¶¶ 24, 45-46.

- Mars' decisions to permit Hill's and Purina to sell Prescription Pet Food through its subsidiary Banfield, and thus through PetSmart, were contrary to Mars' independent economic interest. *Id*. at 28-29, ¶¶ 44, 46.

- To the present time, smaller competitors selling Prescription Pet Food have been unable to obtain distribution through Banfield and PetSmart, with the exception that in 2018, two of them were permitted to sell their Prescription Pet Food through PetSmart's on-line subsidiary Chewy.com as a result of litigation. *Id*. at 19-20, ¶ 16.

- "Mars/Royal Canin, Purina, and Hill's have continuously sold Prescription Pet Food through Banfield and PetSmart in furtherance of their civil conspiracy through the present day." *Id*. at 29, ¶ 47.

- In marketing Prescription Pet Food, these companies all (1) require a prescription from a veterinarian as a precondition of sale to consumers; (2) require retail sellers to enforce this prescription requirement; and (3) sell only to resellers that agree to enforce the prescription requirement. *Id*. at 28, ¶ 42.

21

## The District Court's Decision

In its Order of March 22, 2022, the district court dismissed the Amended Complaint because it found that Plaintiffs' continuing purchases of Defendants' Prescription Pet Food established as a matter of law that Plaintiffs were not injured as required under the MMPA because, "Plaintiffs have not plead [*sic*] that Defendants caused their alleged injuries with particularity. . . ." App. 52; R. Doc. 83 at 6.

The court based its conclusion on findings that the Amended Complaint failed to allege that (1) Plaintiffs "saw any advertising, marketing, labeling, packaging, or representations that prompted them to purchase the product or seek a prescription from their veterinarians for Defendants' products" or (2) "that they purchased the products because of the prescription requirement." *Id*. The court added, "Further, Plaintiffs' continued purchases of the purportedly deceptive products and admission that they would purchase more if prescribed by their veterinarians supports that Defendants have not caused Plaintiffs' injuries." *Id*.

The court reached this conclusion after initially finding, "At first glance, it appears Plaintiffs have set forth a prima facie case for a MMPA violation." *Id.* at 51; R. Doc. 83 at 5. The court continued:

> Plaintiffs allege that they purchased the prescription pet food manufactured by Defendants through third-party retailers such as PetSmart. (Am. Compl., ¶¶ 31, 48, 55). Plaintiffs allege the purchase was for personal or household purposes, specifically to feed their pets.

22

(*Id.*, ¶¶ 48, 55). Plaintiffs additionally allege that the prescription pet food is sold at a substantially higher price because of the prescription requirement and, as a result, Plaintiffs have suffered an ascertainable loss of money. (*Id.*, ¶¶ 4, 54, 61). Finally, Plaintiffs allege the Defendants' enforcement or imposition of a veterinarian prescription requirement upon retailers and consumers as a condition precedent to purchase prescription pet food is unlawful under the MMPA because the prescription requirement "misleads reasonable consumers . . . to believe that such food has been tested and approved by the [FDA], has been subject to government inspection and oversight, and has medicinal and drug properties." (*Id.*, ¶¶ 1, 2, 30).

*Id.*; R. Doc. 83 at 5.

Finally, the court found the civil conspiracy allegations mooted based on its dismissal of the MMPA claim, although the court also found that "Plaintiffs have failed to allege sufficient facts to establish a meeting of the minds." *Id.* at 55-56; R. Doc. 83 at 9-10.

As shown in the Argument that follows, in dismissing the Amended Complaint, the district court failed to construe the allegations in the light most favorable to Plaintiffs; overlooked allegations supporting Plaintiffs' claims; failed to draw reasonable inferences in Plaintiffs' favor; and impermissibly drew negative inferences in favor of Defendants. The district court's ruling also is directly contrary to rulings of every federal and state appellate court that has considered virtually identical causes of action involving the sale of Prescription Pet Food.

23

## SUMMARY OF THE ARGUMENT

Defendants will no doubt advise this Court that this case is one of a series of four Prescription Pet Food cases containing substantially the same allegations, brought by the same group of attorneys. They may also say that the trial courts have now granted motions to dismiss all four cases. This is accurate. On the other hand, all three cases previously dismissed were appealed and resulted in reversing dismissals of the unfair trade practices claims, and one in reversing dismissal of the conspiracy allegations. This case should be the fourth reversal.

The three appellate courts that previously reversed dismissal of complaints stating essentially identical claims under essentially identical unfair trade practices acts include, in order, the U.S. Court of Appeals for the Seventh Circuit, The U. S. Court of Appeals for the Ninth Circuit, and the Kansas Court of Appeals. *Vanzant v. Hill's Pet Nutrition, Inc.*, 934 F.3d 730 (7th Cir. 2019); *Moore v. Mars Petcare US, Inc.*, 966 F.3d 1007 (9th Cir. 2020); *Kucharski-Berger v. Hill's Pet Nutrition, Inc.*, 494 P.3d 283 (Kan. Ct. App. 2021).

The district court tried unconvincingly to distinguish the two federal appellate decisions and never mentioned the Kansas Court of Appeals decision, although Plaintiffs provided the court with the *Kucharski-Berger* opinion on August 23, 2021, seven months before the district court's dismissal order of March 22, 2022. R. Doc. 73.

Appellate Case: 22-1796    Page: 24    Date Filed: 05/31/2022 Entry ID: 5162683

The district court's discussion of the *Vanzant* and *Moore* cases misreads those cases and misstates or ignores material allegations of the Amended Complaint in this case. This case is on all fours with the Kansas appellate decision and indistinguishable from the two federal appellate decisions, with the one exception that the complaints in this case and the Kansas case allege that the plaintiffs continue to buy Prescription Pet Food out of concern for switching their pets' diets too abruptly. While the court here found this to be disqualifying, the Kansas Court of Appeals did not, inasmuch as the plaintiff's injury was being deceived into paying the higher price, which the Kansas plaintiff continued to pay out of concern for the welfare of her pet. The same is true here.

The district court also dismissed the civil conspiracy allegations. Since the court's dismissal of the MMPA claim must be reversed, its dismissal can no longer serve as a basis for dismissal of the civil conspiracy allegations. When properly considered, these allegations allege not only direct evidence of an actual combination among defendants and others to market and sell Prescription Pet Food under a sham prescription arrangement but, also, conduct more consistent with agreement than independent action. The facts alleged are sufficiently plausible to raise a reasonable expectation that discovery will reveal evidence of illegal agreement. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 556 (2007).

Appellate Case: 22-1796    Page: 25    Date Filed: 05/31/2022 Entry ID: 5162683

For these reasons, this Court should reverse the district court's order of dismissal.

Appellate Case: 22-1796    Page: 26    Date Filed: 05/31/2022 Entry ID: 5162683

**ARGUMENT**

# I. THE DISTRICT COURT ERRED IN DISMISSING THE MMPA CLAIM FOR LACK OF PROOF OF CAUSATION OF PLAINTIFFS' INJURIES.

## A. Scope of Review

Because Plaintiffs seek review of dismissal granting a Rule 12(b)(6) motion for failure to state a claim on which relief can be granted, this Court's scope of review is *de novo*. *Warmington v. Bd. of Regents of the Univ. of Minn.*, 998 F.3d 789, 795 (8th Cir. 2021).

Citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007), and *Ashcroft v. Iqbal* , 556 U.S. 662, 678 (2009), this Court requires that "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Warmington*, 998 F.3d at 795. "A claim is facially plausible where the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (internal quotations omitted). "[T]he plausibility standard is not akin to a 'probability requirement.'" *Id*.

This Court considers a complaint "liberally." *Id*. "This court reviews *de novo* the grant of a motion to dismiss under Rule 12(b)(6), construing all reasonable inferences most favorably to the nonmoving party." *East v. Minnehaha Cnty.*, 986 F.3d 816, 820 (8th Cir. 2021). The district court must also accept all non-

27

conclusory factual allegations of the complaint as true. *Rowles v. Curators of the Univ. of Mo.*, 983 F.3d 345, 358 (8th Cir. 2020). The court may not draw inferences in favor of the moving party or fault the non-moving party for not pleading facts that would contradict inferences in favor of the moving party. *Braden v. Wal-Mart Stores, Inc.*, 588 F.3d 585, 595 (8th Cir. 2009).

### B. The Prescription Pet Food Cases

This case is the fourth in a series against this group of manufacturers, marketers, and sellers of Prescription Pet Food brought by this same group of attorneys. The first three are *Vanzant v. Hill's Pet Nutrition, Inc.*, 934 F.3d 730 (7th Cir. 2019); *Moore v. Mars Petcare US, Inc.*, 966 F.3d 1007 (9th Cir. 2020); and *Kucharski-Berger v. Hill's Pet Nutrition, Inc.*, 494 P.3d 283 (Kan. Ct. App. 2021). The trial courts in all four dismissed them for failure to state a claim. The appellate courts hearing the appeal in each case reversed the dismissal of claims brought under state unfair trade practice laws.

Plaintiffs brought this case under the MMPA, which defines unlawful practices in broad terms:

> The act, use or employment by any person of any deception, fraud, false pretense, false promise, misrepresentation, unfair practice or the concealment, suppression, or omission of any material fact in connection with the sale or advertisement of any merchandise in trade or commerce or the solicitation of any funds for any charitable purpose, as defined in section 407.453, in or from the state of Missouri, is declared to be an unlawful practice.

28

Mo. Rev. Stat. § 407.020.

The three other Prescription Pet Food cases rest on similarly broad statutes. *Vanzant*, the Seventh Circuit case, arises under the Illinois Consumer Fraud and Deceptive Business Practices Act, 815 ILL. COMP. STAT. 505/1 *et seq.* 934 F.3d at 736. Section 505/2 defines "unfair methods of competition and unfair or deceptive acts or practices" as including "the use or employment of any deception fraud, false pretense, false promise, misrepresentation or the concealment, suppression or omission of any material fact, with intent that others rely upon the concealment, suppression or omission of such material fact."

*Moore*, the Ninth Circuit case, asserts claims under the California Unfair Competition Law, Cal. Bus. & Prof. Code § 17200 *et seq*., which prohibits any "unlawful, unfair or fraudulent business act or practice," § 17200; California's False Advertising Law, Cal. Bus. & Prof. Code § 17500, *et seq*., which prohibits any "unfair, deceptive, untrue or misleading advertising," § 17500; and California's Consumer Legal Remedies Act ("CLRA"), Cal. Civ. Code § 1750, *et seq*., which prohibits "unfair methods of competition and unfair or deceptive acts or practices," § 1770. 966 F.3d at 1015.

*Kucharski-Berger*, the Kansas Court of Appeals case, involves claims under the Kansas Consumer Protection Act ("KCPA"), K.S.A. Supp. § 50-626 *et seq*., which prohibits "any deceptive act or practice in connection with a consumer

29

transaction" (§ 50-626(a)), including representations that "[p]roperty or services have sponsorship, approval, accessories, characteristics, ingredients, uses, benefits or quantities that they do not have" (§ 50-626(b))." 494 P.3d at 289-90.

Each of these cases sustained a complaint alleging the same deceptive unfair trade practices that Plaintiffs allege in this case, with allegations substantially similar to those of this case. Each of these appellate decisions reversed a district court's dismissal for failure to state a claim on which relief can be granted.

The district court here tried to distinguish the two federal appellate decisions and wholly ignored the Kansas appellate decision, although Plaintiffs provided the court with the decision seven months before the district court's dismissal order. R. Doc. 73.

### C. The District Court's Erroneous Decision in This Case

When examined against the actual allegations of the Amended Complaint, the district court's analysis cannot stand up.

The district court premises its analysis on two glaring misstatements regarding the Amended Complaint. First, the court says that Plaintiffs fail to "allege that they purchased the products because of the prescription requirement." App. 52; R. Doc. 83 at 6. Second, the court finds a "lack of substantive allegations tying the imposition or enforcement of the prescription requirement by Defendants." App. 55; R. Doc. 83 at 9.

30

Taking the second misstatement first, even a cursory reading of the Amended Complaint reveals numerous, repeated allegations that Defendants imposed and enforced the prescription requirement on all resellers, including both veterinarians and retailers like PetSmart. App. 14; R. Doc. 43 at ¶¶ 1 (Defendants "have created and enforced upon retailers and consumers the mandatory use of a prescription, issued by a veterinarian, as a condition precedent to the purchase of certain dog and cat food ('Prescription Pet Food').", 6 ("Defendants "impose and enforce the prescription requirement to prey on the known propensities of consumers to love their pets and trust their vets."), 29, 31 (Defendants "control the sale of Prescription Pet Food at retail to those with a prescription…"), 37 (Defendants "impose the condition precedent of a prescription from a veterinarian, and such condition precedent is an integral step in the marketing, sale, and purchase of Prescription Pet Food.").

Moreover, Defendants have never disputed that they require a veterinarian's prescription as a precondition to consumer purchase of Prescription Pet Food. Their briefing on the motion to dismiss does not deny or dispute their imposition or enforcement of the prescription requirement. R. Docs. 65, 74 *passim*. Indeed, the Ninth Circuit in the *Moore* decision observed that "there is no dispute that all Defendants require a vet prescription as a condition for the purchase of

31

prescription pet food." 966 F.3d at 1013. Both Defendants here were also defendants in *Moore*.[4]

The District Court here, reading the Amended Complaint favorably for Defendants and drawing inferences in their favor, reached a finding of fact contrary to the allegations of the Complaint and to reality.

The first fundamental misreading of the Amended Complaint—that Plaintiffs failed to allege that they purchased products because of the prescription requirement—is flatly contradicted, since both Plaintiffs alleged that they were told and knew that a prescription was required before they could purchase Prescription Pet Food, which they then purchased.[5]

Attempting to distinguish *Vanzant* and *Moore*, the Seventh and Ninth Circuit decisions, the district court said:

> In both cases, the plaintiffs alleged that they received advice from their veterinarians and saw the defendant manufacturers' packaging, marketing materials, and/or advertisements before purchasing the prescription pet food. *Moore I*, 966 F.3d at 1020-21; *Vanzant*, 934 F.3d 739. ***In this case, Plaintiffs do not allege they saw any of Defendants'***

---

[4] After remand, Royal Canin filed its Answer in which it acknowledged requiring a prescription as a condition of purchase, although it referred to the prescription as a "veterinary authorization." Plaintiffs ask this Court to take judicial notice of the Answer, Document 156, in the Docket Report for Case 3:16-cv-07001-MMC in the United States District Court for the Northern District of California. Available at https://ecf.cand.uscourts.gov/cgi-bin/DktRpt.pl?111774961055389-L_1_0-1. Last accessed: May 12, 2022.

[5] Amended Complaint ¶¶ 48-49, 54, 55-56, 61. JApp. 29-30, 32-24; R. Doc. 43 at 16-17, 19-21.

*advertising, marketing, labeling, packaging, or representations before purchasing the food.* (See generally Am. Compl.). ***Instead, they allege that their veterinarians and salespeople at PetSmart told them they cannot buy prescription pet food without a prescription.** (*Am. Compl., ¶¶ 48, 55). **Thus, Plaintiffs' Amended Complaint is devoid of any allegations that Defendants' alleged MMPA violation caused them to purchase the food.***

App. 53; R. Doc. 83 at 7 (emphasis added).

The district court's reading of the Amended Complaint mischaracterizes its allegations, fails to read it in the light most favorable to Plaintiffs or draw reasonable inferences in their favor, and draws inferences in favor of Defendants. Here is what Plaintiffs actually alleged, which shows that Defendants' prescription requirement caused them to make their purchases:

> When Plaintiff Wullschleger was told that she needed a prescription for the Royal Canin dog food she understood and believed that the Prescription Pet Food was intended to treat specific disease and health problems of her dog; that it contained medicine of some sort; that there had been some type of regulatory oversight in its manufacture; and that her purchasing the Prescription Pet Food was substantially similar to the purchase of prescription drugs from a pharmacy such as CVS. She also observed that the Prescription Pet Food was shelved in a section of the PetSmart store separate and distinct from the sections containing non-prescription pet food, and that signs in the Prescription Pet Food section advised that a prescription and MedCard from Banfield were required to purchase Prescription Pet Food.

App. 30; R. Doc 43 at ¶ 49.

> When Plaintiff Brewer was told that she needed a prescription for the Purina cat food, she understood and believed that the Prescription Pet Food was intended to treat specific disease and health problems of her cat; that it contained medicine of some sort; that there had been some type of regulatory oversight in its manufacture; and that her purchasing

the Prescription Pet Food was substantially similar to the purchase of prescription drugs from a pharmacy such as CVS. She also observed that the Prescription Pet Food was shelved in a section of the PetSmart store separate and distinct from the sections containing non-prescription pet food, and that signs in the Prescription Pet Food section advised that a prescription and MedCard from Banfield were required to purchase Prescription Pet Food.

*Id*. at 32-33; R. Doc. 43 at ¶ 56.

These paragraphs also belie the district court's assertion that Plaintiffs failed to allege that they saw "any of Defendants' advertising, marketing, labeling, packaging, or representations before purchasing the food." Both Plaintiffs saw the products on shelves in a separate and distinct store section for Prescription Pet Food, with signs advising that they could not buy Prescription Pet Food without a veterinarian's prescription, just as in a pharmacy.

In granting the motion to dismiss, the district court ultimately relied on the Plaintiffs' allegations that they were continuing to buy Prescription Pet Food due to concern for complications from too abruptly switching their pets' diet. App. 54-55; R. Doc. 83 at 8-9. According to the court, any purchases after Plaintiffs learned of Defendants' MMPA violations—the sham prescription requirement—as a matter of law established that the violations did not cause Plaintiffs' injury. *Id.*

This conclusion, however, finds support neither in the Amended Complaint nor Missouri law. First, there is nothing in the Amended Complaint to support that Defendants made purchases of Prescription Pet Food with knowledge of the sham

34

prescription requirement before filing suit, or even if they did so, when and in what quantity. The court itself conceded, "The Court recognizes that Plaintiffs started purchasing the prescription pet food before they discovered the alleged deception." App. 54; R. Doc. 83 at 8. What the Amended Complaint says about Plaintiffs' continuing purchases of Prescription Pet Food after they filed suit is that they have done so for a very specific reason:

> Plaintiffs Wullschleger and Brewer, who are currently feeding their pets Prescription Pet Food, *are reluctant to change their pets' diet abruptly* and may again purchase Prescription Pet Food if their pets reacted well to it in the past, or if their veterinarians prescribe a new Prescription Pet Food.

App. 34; R. Doc. 43 at ¶ 62 (emphasis added).

Also, the injury Plaintiffs claim is not from acquiring and feeding Prescription Pet Food to their pets. The injury is paying the inflated unjustified price premium attributable to the sham prescription requirement. Regardless of whether Prescription Pet Food is good for their pets, Plaintiffs have paid a higher price than they would have paid in the absence of the sham prescription requirement. App. 32, 34; R. Doc. 43, ¶¶ 54, 61; *see also* ¶¶ 50-53, 57-60. Now that their pets have developed a dependence on the Prescription Pet Food, Plaintiffs are understandably reluctant to switch diets.

The district court again impermissibly drew an adverse inference, and construed the allegations of the Amended Complaint favorably to Defendants,

Appellate Case: 22-1796     Page: 35     Date Filed: 05/31/2022 Entry ID: 5162683

when the court assumed that Plaintiffs were entirely satisfied to continue buying Prescription Pet Food even after learning of the Defendants' deceptive practices.

As noted, the one appellate Prescription Pet Food decision the district court ignored was *Kucharski-Berger* in the Kansas Court of Appeals. Significantly, in *Kucharski-Berger*, the appellate court rejected a very similar defense, which was asserted by defendant Hill's, specifically that the plaintiff, Ms. Kucharski-Berger, "failed to allege a causal connection between the prescription practice and her alleged injury," requiring dismissal of the case. In rejecting the defense, the Court made clear that the plaintiff's injury was not from the product itself, which she continued to buy, but from the price resulting from the deceptive prescription requirement, an injury she sustained with each new purchase.

> Kucharski-Berger is not alleging that the prescription pet food that she is buying is ineffective or harmful to her pet. Given that she continues to buy it she must see some value in the pet food. Her assertion is that the price of the pet food is significantly higher than it should be because of Hill's allegedly deceptive marketing practices. So she properly alleges that she is aggrieved by being required to pay higher prices for dog food based solely on Hill's manufactured prescription requirement.

*Kucharski-Berger*, 494 P.3d at 295. The same is true here.

In addition, the Kansas court found that the plaintiff's failure to allege that she saw any Hill's advertising or labels before purchasing Prescription Pet Food did not preclude her from suing, inasmuch as the veterinarian's statements that that the food was "available only by prescription" was "directly related" to the allegations about

Appellate Case: 22-1796    Page: 36    Date Filed: 05/31/2022 Entry ID: 5162683

Hill's' "deceptive marketing" in requiring a prescription. *Id.* Again, the same is true here. The injury is the price premium, which Plaintiffs continue to suffer now that their pets are dependent on the product.

Here, the district court has not liberally read the Amended Complaint and drawn all reasonable inferences in favor of Plaintiffs. It has in fact done the opposite. The court has acknowledged that "Plaintiffs started purchasing the prescription pet food before they discovered the alleged deception." What the court failed to do was recognize that Plaintiffs sustained injury at least up to the time they learned of the deception and to draw the reasonable inference that Defendants' deception entrapped Plaintiffs into having to continue buying Prescription Pet Food out of concern for their pets' welfare if Plaintiffs changed diets. Instead, the court impermissibly drew the adverse inference that Plaintiffs were content to pay the higher prices for Prescription Pet Food and thus sustained no injury, while it is equally likely that Defendants' deceptive prescription requirement left Plaintiffs believing they had no other choice due to the potential complications from switching their pets' diets.

In deciding a motion for failure to state a claim, a court may not choose between plausible competing inferences. *Starr v. Baca*, 652 F.3d 1202,1216 (9th Cir. 2011) ("If there are two alternative explanations, one advanced by defendant and the other advanced by plaintiff, both of which are plausible, plaintiff's

37

complaint survives a motion to dismiss under Rule 12(b)(6).”). *See United States v. Eppolito*, 543 F.3d 25, 45 (2nd Cir. 2008).

In addition, the cases the district court relied on for its ruling of no injury do not support the court's conclusion. To begin with, the MMPA is to receive broad and liberal interpretation. *Schulte v. Conopco, Inc*., 997 F.3d 823, 826 (8th Cir. 2021):

> The terms of the statute are "unrestricted, all-encompassing and exceedingly broad." *Ports Petroleum Co. v. Nixon* , 37 S.W.3d 237, 240 (Mo. banc 2001). Consumers need not have "a direct contractual relationship" to "maintain a suit under the MMPA against a party with a connection to the merchandise before a buyer enters the transaction." *Conway v. CitiMortgage, Inc.*, 438 S.W.3d 410, 416 (Mo. banc 2014). "The purpose of the Merchandising Practices Act is to supplement the definitions of common law fraud in an attempt to preserve fundamental honest, fair play and right dealings in public transactions." *Sunset Pools of St. Louis, Inc. v. Schaefer*, 869 S.W.2d 883, 886 (Mo. App. 1994).

*Huch v. Charter Communications, Inc.*, 290 S.W.3d 721, 724 (Mo. 2009) (“The legislature intended section 407.020 to 'supplement the definitions of common law fraud in an attempt to preserve fundamental honesty, fair play and right dealings in public transactions.'…. It is not necessary in order to establish 'unlawful practice' to prove the elements of common law fraud.”)

None of the cases on which the district court relied in dismissing the Amended Complaint support the court's order. The district court cites *State ex rel. Coca-Cola Co. v. Nixon*, 249 S.W.3d 855 (Mo. 2008), and *In re Bisphenol-A (BPA) Polycarbonate Plastic Products Liability Litigation,* MDL No. 1967, 2011

WL 6740338 (W.D. Mo. Dec. 22. 2011), at pages 6 and 7 of its order, respectively. App. 52-53; R. Doc. 83 at 6,7. Neither case, however, involves a motion to dismiss. Both cases deal with unsuccessful motions for class certification. In *Nixon*, the Missouri Supreme Court reversed a grant of class certification for a class of purchasers of Diet Coke, because the certified class would have included an undefined number of purchasers who preferred Diet Coke with saccharin, and thus were not injured, 249 S.W. 3d at 862-64, and in addition, the plaintiffs provided no way "to quantify any difference in the economic value between saccharin and non-saccharin Diet Coke," *id*., at 863.

This case presents no such infirmities. The injury comes not from any product preference, but from the higher price of Prescription Pet Food as a result of the misleading, deceptive, and unjustified prescription requirement. Whether or not class members would have bought the pet food, no rational consumer would have been willing to pay an unreasonable, unnecessary price premium induced by deceit.

In the *Bisphenol-A* case, relying on the *Coca-Cola* decision, the federal district court refused to certify a class for an MMPA claim because "Individuals who knew about BPA's existence and the surrounding controversy before purchasing Defendants' products have no injury." WL 6740338 at *1-2. For the same reasons *Coca-Cola* is distinguishable, so is *Bisphenol-A*. This case is not

39

about a defective or dangerous product. It is a about a product Defendants misrepresented as having certain attributes, such as government review and approval or medicinal components, in order to exact a price premium. Nor is there any evidence that pet owners willingly paid that premium knowing the truth. Certainly, Plaintiffs did not, having brought suit to recover the illegal premium, and continuing their purchases only out of concern over abruptly altering their pets' diet.

The district court also cited *Bratton v. Hershey Co.*, No. 2:16-cv-4322-C-NKL, 2018 WL 934899, at *2-3 (W.D. Mo. Feb. 16, 2018), in support of its ruling. App. 54; R. Doc. 83 at 8. In that case, however, the court granted a defense motion for summary judgment only after the plaintiff "admitted that, since well before the class period, he has been aware of approximately how much candy and how much empty space was in each box of Whoppers and Reese's Pieces, and that he nonetheless continued to purchase the boxes." 2018 WL 934899 at *3. The plaintiff purchased in total "approximately 600 boxes of each of the boxes of candy at issue in this litigation." *Id*. at *1. These purchases began in 2006, 10 years before plaintiff brough suit. The Amended Complaint in this case presents nothing remotely comparable in terms of acceptance of deception.

The district court cited *Owen v. General Motors Corp*., 533 F.3d 913 (8th Cir. 2008), App. 54; R. Doc. 83 at 8, in which this Court affirmed summary

40

judgment dismissing an MMPA claim based on failure to disclose a defective wiper assembly in plaintiffs' Chevy Tahoe because plaintiffs "failed to submit evidence from which a jury could conclude that they suffered an ascertainable loss as a result of that omission because they could not demonstrate that the wiper motor in their 1999 Tahoe was actually defective." 553 F.3d at 922. In this case, however, there is no question that Plaintiffs paid a price premium because Hill's employed a sham prescription requirement. Their injury directly resulted from paying that premium.

Finally, the district court's order cites *McCall v. Monro Muffler Brake, Inc*., No. 10–269, 2013 WL 1282306, at *5 (E.D. Mo. Mar. 27, 2013). App. 54; R. Doc. 83 at 8. That case, however, has no bearing on any of the issues in this case, because the district court granted summary judgment based on the defendant's complete disclosure of all facts plaintiff claimed were concealed. 2013 WL 1282306, at *4-5. There is no dispute here that Defendants never told Plaintiffs that there was no legal requirement for a prescription, that its Prescription Pet Food contained no drug or medicine, that it had never submitted or obtained FDA review and approval for its Prescription Pet Food, or that the FDA had found that Defendants were selling adulterated, misbranded, and unsafe pet food.

As previously discussed, the district court attempts to buttress its finding of lack of injury with its assertion of a "lack of substantive allegations tying the

41

imposition or enforcement of the prescription requirement by Defendants" to Plaintiffs' purchases of Prescription Pet Food. App. 54-55; R. Doc. 83 at 8-9. As shown, in making this unsupported argument, the district court is creating an issue of fact that Defendants never raised and have in fact conceded does not exist. Defendants have never disputed, and have conceded, that consumers cannot buy their Prescription Pet Food without a prescription from a veterinarian.

It is immaterial that consumers do not purchase directly from Defendants, or that Defendants are not present at the purchase. The Missouri Supreme Court has made clear that if the sale to a consumer takes place pursuant to a deceptive trade practice created by the defendants—here the sham prescription requirement—their creation of this deceptive marketing scheme is "in connection with" the purchase of the product. *Conway v. CitiMortgage, Inc*., 438 S.W.3d 410, 416 (Mo. 2014).

The district court erred in granting Defendants' motion to dismiss Plaintiffs' MMPA claim, and this Court should reverse and remand to the district court for further proceedings and trial.

42

## II. THE DISTRICT COURT ERRED IN DISMISSING THE MISSOURI COMMON LAW CIVIL CONSPIRACY CLAIM.

### A. Scope of Review

As previously noted, the scope of review for this issue is *de novo* because Plaintiffs seek review of a Rule 12(b)(6) dismissal for failure to state a claim on which relief can be granted. *Warmington*, 998 F.3d at 795.

### B. Missouri Civil Conspiracy Law

A claim for civil conspiracy under Missouri law is not an independent cause of action. *W. Blue Print Co. v. Roberts*, 367 S.W.3d 7, 22 (Mo. 2012) ("Although civil conspiracy has its own elements that must be proven, it is not a separate and distinct action."). Its function, if proven, is "to hold the conspirators jointly and severally liable for the underlying act." *Id.*, citing and quoting *8000 Maryland v. Huntleigh Financial Serv.*, 292 S.W.3d 439, 451 (Mo. App. 2009).

The district court's primary ground for dismissing the civil conspiracy allegations is that inasmuch as the court found Plaintiffs had not proved the underlying act, violation of the MMPA, the civil conspiracy claimed necessarily failed. App. 55; R. Doc. 83 at 9, citing and quoting *Oak Bluff Partners, Inc. v. Meyer*, 3 S.W.3d 777, 781 (Mo. 1999).

Of course, if this Court reverses dismissal of the MMPA claim, then the civil conspiracy claim revives. Presumably to prevent this, the district court further

found that "Plaintiffs have failed to allege sufficient facts to establish a meeting of the minds." *Id*. Plaintiffs disagree,

The elements of a civil conspiracy claim require a plaintiff to allege that "(1) two or more persons; (2) with an unlawful objective; (3) after a meeting of the minds; (4) committed at least one act in furtherance of the conspiracy; and (5) … [the plaintiff] was thereby damaged." *W. Blue Print Co.*, 367 S.W.3d at 22. The Amended Complaint satisfies all of these requirements.

### C. Plaintiffs Meet the Elements of Pleading Civil Conspiracy

(1) <u>Two or more persons</u>: The Amended Complaint alleges the members of the conspiracy to be Defendants, their competitor Hill's, retailer PetSmart, and veterinary clinics owned directly or indirectly by Mars. App. 14-15, 18-21; R. Doc. 43 at ¶¶ 1, 3, 13-18.

 (2) <u>Unlawful objective</u>: The Amended Complaint alleges two interrelated unlawful objectives: a deceptive sham prescription requirement in violation of the MMPA, with the effect of collectively raising prices for Prescription Pet Food. App. 14-44; R. Doc. 43, *passim*.

(3) <u>Meeting of the Minds</u>: The Amended Complaint alleges that Defendants Royal Canin and Purina have formed and are engaged in a combination with Mars, PetSmart, Banfield, and other Mars wholly-owned veterinary clinics and pet

44

hospitals to market Prescription Pet Food through a self-created deceptive prescription requirement. Plaintiffs will discuss this in detail in the next section.

(4) Overt acts in furtherance of the conspiracy: The overt acts are of course the sale of Prescription Pet Food to pet owners, including Plaintiffs.

(5) Damage to Plaintiffs: The damage to pet owners, including Plaintiffs, is paying the unjustified price premium resulting from the deceptive sham prescription requirement. This is fully discussed above.

**D. The Amended Complaint Sufficiently Pleads a Meeting of the Minds**

The Amended Complaint pleads sufficient facts establishing a meeting of the minds by Defendants and their co-conspirators. The particulars are that the three manufacturers, which have a combined share of at least 95 percent of all domestic sales of Prescription Pet Food, all sell through an arrangement with PetSmart's stores housing Banfield clinics, owned by Mars. All participants in the arrangement use the same deceptive prescription requirement, which misleads pet owners into paying a price premium based on their misunderstanding that the prescription requirement means that Prescription Pet Food contains a drug or other medicine and has been reviewed and approved by appropriate government authorities. App. 14-15, 18-21, 27-29; R. Doc. 43 at ¶¶ 1-3, 14-21, 39-47.

This is not an ordinary garden variety sales arrangement. It is a unique, deliberately constructed marketing and selling combination in which three

45

competitors and their retailers require consumers to go through an elaborate series of steps to obtain a product that could otherwise be sold without this "white coat" rigmarole.

The Amended Complaint also alleges, "Mars/Royal Canin, Purina, and their civil co-conspirators have at all times known that Prescription Pet Food is not legally required or allowed to be sold by prescription, that representing expressly or implicitly that a prescription is legally required is false, and that all of them know this." *Id.*, ¶ 35. Although Fed. R. Civ. P. 9(b) requires pleading fraud with particularity, it also provides, "Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Thus, all participants in this combination both know it is deceptive and know that the others know it is deceptive. All are engaging in the same deceptive practice knowing that they all know it is deceptive.

The combination has been in effect since at least 2006. App. 29; R. Doc. 43 at ¶¶ 46-47. The Amended Complaint details the steps to its formation. In 1994, Mars and PetSmart jointly acquired Banfield and executed an agreement to form a strategic partnership locating Banfield clinics in PetSmart stores. *Id.*, ¶ 39. In March 2005, Mars, PetSmart, Banfield, and Hill's entered into a "merchandising agreement" allowing Hill's to join Royal Canin in selling Prescription Pet Food through Banfield locations in PetSmart stores. *Id.*, ¶ 41, 43. As the majority owner of PetSmart and later the sole owner, Mars has had the power to exclude Hill's

Appellate Case: 22-1796      Page: 46      Date Filed: 05/31/2022 Entry ID: 5162683

from this arrangement but has chosen not to. *Id*. Similarly, in approximately 2006, Mars, with the power to exclude its Prescription Pet Food competitors as the owner of Banfield, allowed Purina to join the arrangement selling Prescription Pet Food through Banfield clinics at PetSmart locations. *Id*., ¶¶ 45-46.

Since that time, Defendants and Hill's have all imposed the sham prescription requirement as a precondition to sales to pet owners, have required resellers to enforce the prescription requirement, and have sold only to resellers that have agreed to do so. *Id*., ¶ 42.

Allowing Royal Canin's competitors into Banfield and thereby PetSmart was contrary to the independent interest of both Mars and Royal Canin, but it made sense if the participants of the arrangement were involved in a scheme to use a deceptive prescription requirement to mislead customers into paying a price premium for Prescription Pet Food. The inclusion of the other manufacturers that dominated the industry would minimize the risk of defection and exposure. *Id*.

The Prescription Pet Food business is built on trust. It depends for its success on the premise that consumers "love their pets and trust their vets." *Id*., ¶ 6. Exposure of the deceptive use of the prescription requirement could result in the irrevocable loss of consumer trust and sales and profits of Defendants and their co-conspirators. Hence the need to keep the major players inside the tent, and not outside.

These circumstances are highly probative of unlawful conspiracy. *In re Musical Instruments & Equip. Antitrust Litig.*, 798 F.3d 1186, 1195 (9th Cir. 2015) ("More extreme action against self-interest, however, may suggest prior agreement—for example, where individual action would be so perilous in the absence of advance agreement that no reasonable firm would make the challenged move without such an agreement.").

The structure of the Prescription Pet Food business is also conducive to collusion. There are high barriers to entry that preclude new entry and entry by smaller firms able to undercut anticompetitive pricing. These barriers include large entrenched firms with significant resources; the need for distribution through pet supply superstores because a highly fragmented and dispersed network of veterinary practices and pet food stores otherwise requires prohibitive distribution costs; and "for those competing ethically with a prescription Rx designation, submission to and compliance with FDA regulatory requirements and processes" App. 23; R. Doc 43 at ¶ 27.[6] *See In re High Fructose Corn Syrup Antitrust Lit.*, 295 F.3d 651, 656 (7th Cir. 2002) (Posner, J.).

---

[6] At page 2 of its order describing the pet food business, the district court included "compliance with FDA requirements and processes," but left out the qualifier, "for those competing ethically with a prescription Rx designation," which was stated in ¶ 27 of the Amended Complaint. Obviously, Defendants and their co-conspirator are not competing ethically, as the Amended Complaint repeatedly alleges. App. 48; R. Doc. 83 at 2.

48

The law of conspiracy distinguishes between direct and circumstantial evidence. With direct evidence, such as eyewitness or documentary evidence of agreement, no further inference is required to find unlawful collusion. Circumstantial evidence permits a finding of conspiracy based on inferences drawn from conduct. *United States v. Williams*, 534 F.3d 980, 985 (8th Cir. 2008) ("A formal agreement is not required to create a conspiracy, and the existence of a conspiracy can be proved by direct or circumstantial evidence."). This case contains both. Direct evidence is the combination formed through PetSmart and Banfield. Circumstantial evidence is the parallel conduct of Defendants and their co-conspirators using a deceptive prescription requirement they all know is not required by any government entity, as well as Mars' allowing Royal Canin's competitors access to the PetSmart-Banfield sales combination.

As the Supreme Court said in *Interstate Circuit v. United States*, 306 U.S. 208, 227 (1939), "It is elementary that an unlawful conspiracy may be and often is formed without simultaneous action or agreement on the part of the conspirators. Acceptance by competitors, without previous agreement, of an invitation to participate in a plan the necessary consequence of which, if carried out, is restraint of interstate commerce, is sufficient to establish an unlawful conspiracy. . . ." (internal citations omitted). Seven years later, in *American Tobacco Co v. United*

49

*States*, 328 U.S. 781, 809-10 (1946), the Court, in language particularly relevant here, said of unlawful conspiracies in restraint of trade,

> It is not the form of the combination or the particular means used but the result to be achieved that the statute condemns. It is not of importance whether the means used to accomplish the unlawful objective are in themselves lawful or unlawful. Acts done to give effect to the conspiracy may be in themselves wholly innocent acts. Yet, if they are part of the sum of the acts which are relied upon to effectuate the conspiracy which the statute forbids, they come within its prohibition. No formal agreement is necessary to constitute an unlawful conspiracy. Often crimes are a matter of inference deduced from the acts of the person accused and done in pursuance of a criminal purpose. Where the conspiracy is proved, as here, from the evidence of the action taken in concert by the parties to it, it is all the more convincing proof of an intent to exercise the power of exclusion acquired through that conspiracy. The essential combination or conspiracy in violation of the Sherman Act may be found in a course of dealings or other circumstances as well as in any exchange of words.

There may be nothing intrinsically unlawful in agreements between one or more manufacturers and a retailer to sell their products, but when they combine, as here, to have their products sold using the same deceptive marketing device—a sham prescription requirement, which they all know to be a sham—at enhanced, unjustified, premium prices, it is fair and plausible to infer that they are acting pursuant to agreement. This conclusion becomes even stronger when the parties act contrary to their individual, independent economic interests, as they have here, risking irrevocable loss of pet owner trust.

After declining to follow the Ninth Circuit's opinion sustaining the plaintiffs' unfair trade practice claims, the district court accepted the Ninth

Circuit's separate decision affirming dismissal of the antitrust claims. *Moore v. Mars Petcare US, Inc*., 820 F. App'x 573 (9th Cir. 2020). The district court ignored, however, the contrary decision of the Kansas Court of Appeals sustaining the sufficiency of the plaintiff's allegations of violations of the Kansas Restraint of Trade Act ("KRTA"), K.S.A. 2020 Supp. 50-101 and K.S.A. 2020 Supp. 50-112. *Kucharski-Berger*, 494 P.3d at 296-300.

The district court's reasoning in dismissing the conspiracy allegations contains a number of defects. Specifically, quoting the Ninth Circuit, the district court says that "there were 'obvious alternative explanations' for the defendants' conduct." App. 55; R. Doc. 83 at 9. With a single exception, however, discussed below, nowhere does the district court say that Plaintiffs' explanation of Defendants' conduct—agreement to use a sham prescription requirement to raise prices—is implausible, which is what the Supreme Court requires for dismissal of a conspiracy claim.

> Asking for plausible grounds to infer an agreement does not impose a probability requirement at the pleading stage; it simply calls for enough fact to raise a reasonable expectation that discovery will reveal evidence of illegal agreement. And, of course, a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and "that a recovery is very remote and unlikely."

*Twombly*, 550 U.S. at 556 (quoting *Scheuer v. Rhodes*, 416 U. S. 232, 236 (1974)). Given the Defendants' unique arrangement and combination for the marketing and

51

sale of Prescription Pet Food shown by the record in this case, there is more than a reasonable expectation that discovery will reveal evidence of illegal agreement.

The single exception noted above is the district court's conclusion, "Further, Plaintiffs' suggestion that one Mars subsidiary (Royal Canin) has the power to exclude competitors from an independent retail chain (PetSmart) because the retail chain houses clinical locations for a second Mars subsidiary (Banfield) is *implausible*." App. 10; R. Doc. 83 at 10 (emphasis added). This statement fails to read the Complaint in the light most favorable to Plaintiffs and draw all reasonable inferences in their favor. The Amended Complaint specifically alleges that Mars has been directly or indirectly the majority owner (79 percent), and eventually sole owner (100 percent), of Banfield. App. 20; R. Doc. 43 at ¶ 17. There is nothing implausible about the owner of a company having the power to decide with whom that company will do business, especially if that company is considering doing business with a competitor of the owner.

The district court then says, "First, if Royal Canin and/or Mars had that level of influence over PetSmart, it makes little sense that Royal Canin and/or Mars would allow PetSmart to sell its two major competitors' (Purina and Hill's) products." App. 56; R. Doc. 83 at 10. EXACTLY! It does make little sense for Mars and Royal Canin to do this, UNLESS the three competing manufacturers and PetSmart have an agreement to engage in a price-fixing conspiracy premised on

52

the use of a deceptive sham prescription requirement. The district court essentially validates Plaintiffs' conspiracy claim with this concession. Of course, it makes little sense for Mars to allow Royal Canin's competitors to do business through Banfield and PetSmart, unless this is part of the illegal agreement alleged in the Amended Complaint.

The district court also accepts the Ninth Circuit's observation that Plaintiffs' "conspiracy theory failed to account for the role of other players in the market." This is demonstrably untrue. The Amended Complaint alleges that Defendants and Hill's "collectively have a market share of at least 95 percent in the United States market for Prescription Pet Food. These entities likewise collectively have a market share of the Prescription Pet Food market in Missouri of a comparable percentage." App. 21; R. Doc. 43 at ¶ 21. There simply are no other players in the market worth accounting for. Further, Mars' veterinary practices employ 76 veterinarians in Missouri. App. 20-21; R. Doc. 43 at ¶¶ 17-19. The Amended Complaint provides simply no basis for requiring Plaintiffs to plead what companies, if any, account for no more than the remaining five percent of the Prescription Pet Food business in Missouri.

Quoting the Ninth Circuit's second *Moore* opinion, the district court concludes, "'Given that these other players also produce, sell, and prescribe prescription pet food, their behavior—insofar as it is like that of Defendants—

53

provides a market-based reason for what Plaintiffs allege to be a conspiracy.' *Moore II*, 820 F.App'x at 576. Thus, Plaintiffs' civil conspiracy claim fails." App. 56; R. Doc. 83 at 10. In fact, it does not fail. If anything is implausible, it is that companies having at most five percent of a market and restricted access to distribution can deter and disrupt a price-fixing conspiracy by firms owned by industrial giants Mars, Nestle, and Colgate.

The civil conspiracy allegations are more than adequate to raise a reasonable expectation that discovery will provide evidence of illegal agreement. It was error for the district court to rule otherwise. This Court should reverse that ruling.

## CONCLUSION

On the basis of the foregoing arguments and authorities, Plaintiffs respectfully request this Court to reverse the district court's order dismissing the Amended Complaint and remand this case to the district court for further proceedings and trial.

Respectfully submitted,

*/s/ James P. Frickleton*

JAMES P. FRICKLETON      MO #31178
Bartimus Frickleton Robertson Rader, PC
4000 W. 114th Street, Suite 310
Leawood, KS  66211
(913) 266-2300 / (913) 266-2366 (fax)
jimf@bflawfirm.com

DANIEL R. SHULMAN (*pro hac vice*)

54

Shulman & Buske PLLC
126 North Third Street, Suite 402
Minneapolis, MN 55401
(612) 870-7410 / (612) 870-7462 (fax)
dan@shulmanbuske.com

MICHAEL P. MORRILL (*pro hac vice*)
Pope Mcglamry, P.C.
3391 Peachtree Road NE, Suite 300
Atlanta, GA 30326
(404) 523-7706 / (404) 524-1648 (fax)
mikemorrill@pmkm.com

**ATTORNEYS FOR APPELLANTS**

## CERTIFICATE OF COMPLIANCE

Counsel for Appellant hereby certifies the following:

1.    The Brief of Appellant complies with the type-volume limitation set forth in Fed. R. App. P. 32(a)(7)(B)(i), in that the Brief contains less than 10,753 words and less than 1,048 lines of text (including headings, footnotes and quotes and excluding the Corporate Disclosure Statement, Table of Contents, Table of Authorities, and Certificates).

2.    The Brief of Appellee complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because this Brief has been prepared in a proportionally spaced typeface using Microsoft Word, Version 2204, in 14-point font size and Times New Roman type style.

3.    In accordance with Fed. R. App. P. 32(h)(2), the Brief of Appellant and Appellant's Appendix have been scanned for viruses and they are virus-free.


*/s/ James P. Frickleton*

JAMES P. FRICKLETON        MO #31178
Bartimus Frickleton Robertson Rader, PC
4000 W. 114th Street, Suite 310
Leawood, KS  66211
(913) 266-2300 / (913) 266-2366 (fax)
jimf@bflawfirm.com

Appellate Case: 22-1796    Page: 56    Date Filed: 05/31/2022 Entry ID: 5162683

DANIEL R. SHULMAN (*pro hac vice*)
Shulman & Buske PLLC
126 North Third Street, Suite 402
Minneapolis, MN 55401
(612) 870-7410 / (612) 870-7462 (fax)
dan@shulmanbuske.com

MICHAEL P. MORRILL (*pro hac vice*)
Pope Mcglamry, P.C.
3391 Peachtree Road NE, Suite 300
Atlanta, GA 30326
(404) 523-7706 / (404) 524-1648 (fax)
mikemorrill@pmkm.com

**ATTORNEYS FOR APPELLANTS**

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on May 31, 2022, a copy of this Appellant's Brief and Addendum were served on all attorneys of record through the ECF Filing system. Furthermore, a physical copy of Appellant's Brief and Addendum was mailed via U.S. Mail, postage prepaid to:

CHRISTOPHER M. CURRAN
J. FRANK HOGUE
White & Case LLP
701 Thirteenth Street, N.W.
Washington, D.C. 20005
(202) 626-3600
ccurran@whitecase.com
fhogue@whitecase.com

BRYAN A. MERRYMAN
White & Case LLP
555 South Flower Street, Suite 2700
Los Angeles, CA 90071
(213) 620-7700
bmerryman@whitecase.com

MICHAEL S. HARGENS
Husch Blackwell LLP
4801 Main Street, Suite 1000
Kansas City, MO 64112
(816) 283-4636
michael.hargens@huschblackwell.com

**ATTORNEYS FOR APPELLEE NESTLÉ PURINA PETCARE CO.**

STEPHEN D. RABER
JOSEPH S. BUSHUR
Williams & Connolly LLP
680 Maine Avenue, S.W.
Washington, D.C. 20024

Appellate Case: 22-1796    Page: 58    Date Filed: 05/31/2022 Entry ID: 5162683

(202) 434-5000
sraber@wc.com
jbushur@wc.com

JASON M. HANS
GM Law PC
1201 Walnut, Suite 2000
Kansas City, MO 64106
(816) 471-7700
jasonh@gmlawpc.com

**ATTORNEYS FOR APPELLEE ROYAL CANIN U.S.A., INC.**

Appellate Case: 22-1796    Page: 59    Date Filed: 05/31/2022 Entry ID: 5162683