No. 22-1796

# UNITED STATES COURT OF APPEALS
# FOR THE EIGHTH CIRCUIT

_____

ANASTASIA WULLSCHLEGER and GERALDINE BREWER,

*Plaintiffs-Appellants*,

v.

ROYAL CANIN U.S.A., INC. and NESTLÉ PURINA PETCARE COMPANY,

*Defendants-Appellees*.

_____

On Appeal from the United States District Court
for the Western District of Missouri
No. 4:19-cv-00235-GAF

_____

## APPELLEES' BRIEF
_____

Bryan A. Merryman
WHITE & CASE LLP
555 South Flower Street, Suite 2700
Los Angeles, CA 90071
(213) 620-7700
bmerryman@whitecase.com

Christopher M. Curran
WHITE & CASE LLP
701 Thirteenth Street, N.W.
Washington, D.C. 20005
(202) 626-3600
ccurran@whitecase.com

*Counsel for Appellee Nestlé Purina PetCare Company*
(*Additional Counsel Listed on Inside Cover*)

July 1, 2022

Michael S. Hargens
HUSCH BLACKWELL LLP
4801 Main Street, Suite 1000
Kansas City, Missouri 64112
(816) 283-4636
Michael.hargens@huschblackwell.com

*Counsel for Appellee Nestlé Purina PetCare Company*

Jason M. Hans
GM Law PC
1201 Walnut Street, Suite 2000
Kansas City, Missouri 64106
(816) 471-7700
jasonh@gmlawpc.com

Stephen D. Raber
Joseph S. Bushur
WILLIAMS & CONNOLLY LLP
680 Maine Avenue, S.W.
Washington, D.C. 20024
(202) 434-5000
sraber@wc.com

*Counsel for Appellee Royal Canin U.S.A., Inc.*

# SUMMARY OF THE CASE

Plaintiffs-Appellants are pet owners who, upon the recommendation of their veterinarians, purchased pet food that requires authorization (or a "prescription") from a veterinarian. They brought this action against Defendants-Appellees Royal Canin U.S.A., Inc. and Nestlé Purina PetCare Company, who manufacture the pet food at issue. Plaintiffs admit that — notwithstanding their belief that the prescription requirement is misleading — they continue to buy Defendants' Prescription Pet Food and would purchase new Prescription Pet Food if their veterinarians recommended it. And, while they contend that their injury is paying an "inflated unjustified price premium," Plaintiffs admit that the food requires "substantial research and development expertise and investment" and contains different ingredients in different amounts than non-prescription pet food.

The district court properly dismissed Plaintiffs' Missouri Merchandising Practices Act claims because their allegations showed that they purchased Defendants' pet food because their veterinarians recommended it, not because of any prescription requirement. The district court properly dismissed Plaintiffs' civil conspiracy claim because they failed to allege facts plausibly suggesting a "meeting of the minds" among Defendants and alleged co-conspirators.

Defendants agree with Plaintiffs-Appellants' request for oral argument, but suggest that 10 minutes per side is sufficient.

## CORPORATE DISCLOSURE STATEMENT

Pursuant to Rule 26.1(a) of the Federal Rules of Appellate Procedure, Nestlé Purina PetCare Company ("Purina") certifies that it is a wholly owned subsidiary of Nestlé S.A., a Swiss corporation whose shares are traded publicly in Switzerland on the SIX Swiss Exchange and in the United States over the counter in the form of American Depository Receipts. No publicly held company owns 10% or more of Nestlé S.A.'s stock.

Pursuant to the same rule, Royal Canin U.S.A., Inc. ("Royal Canin") certifies that it is a wholly owned subsidiary of Mars, Incorporated. Mars, Incorporated is a privately held corporate entity, and no publicly held company owns 10% or more of the stock of Mars, Incorporated or Royal Canin.

# TABLE OF CONTENTS

SUMMARY OF THE CASE ................................................................ i

CORPORATE DISCLOSURE STATEMENT ...................................... ii

STATEMENT OF JURISDICTION ................................................... 1

STATEMENT OF THE ISSUES ........................................................ 1

STATEMENT OF THE CASE ........................................................... 3

    I.    Procedural History ........................................................ 3

    II.   Plaintiffs' Allegations .................................................. 4

SUMMARY OF ARGUMENT .......................................................... 7

ARGUMENT ................................................................................ 13

    I.    The District Court Correctly Determined that the Amended
          Complaint Fails to State an MMPA Claim ........................ 15

          A.    There Are Insufficient Factual Allegations to Support
               Plaintiffs' MMPA Claims ....................................... 15

          B.    Decisions in Other Courts Involving Different State-
               Law Claims Do Not Save Plaintiffs' Deficient MMPA
               Claims ................................................................. 29

    II.   The District Court Correctly Determined that the Amended
          Complaint Fails to State a Civil Conspiracy Claim Under Missouri
          Law ............................................................................. 32

CONCLUSION ............................................................................ 43

CERTIFICATE OF COMPLIANCE ................................................. 44

CERTIFICATE OF SERVICE ........................................................ 45

Appellate Case: 22-1796    Page: 5    Date Filed: 07/01/2022 Entry ID: 5173534

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*Aguilar v. PNC Bank, N.A.*,
 853 F.3d 390 (8th Cir. 2017) ........................................................................32

*American Tobacco Co. v. United States*,
 328 U.S. 781 (1946)........................................................................................36

*Arnold v. AT&T, Inc.*,
 No. 4:10-2429-SNLJ, 2012 U.S. Dist. LEXIS 58512
 (E.D. Mo. Apr. 26, 2012)..................................................................14, 33, 42

*Ashcroft v. Iqbal*,
 556 U.S. 662 (2009).................................................................................*passim*

*Bell Atl. Corp. v. Twombly*,
 550 U.S. 544 (2007).................................................................................*passim*

*Braden v. Wal-Mart Stores, Inc.*,
 588 F.3d 585 (8th Cir. 2009) ..........................................................................14

*Bratton v. Hershey Co.*,
 No. 2:16-cv-4322-C-NKL, 2018 U.S. Dist. LEXIS 26031
 (W.D. Mo. Feb. 16, 2018)....................................................................18, 22, 23

*Chochorowski v. Home Depot U.S.A.*,
 404 S.W.3d 220 (Mo. banc 2013).....................................................................28

*Cridlebaugh v. Citimortgage, Inc.*,
 No. 12-6078-SJ-ODS, 2012 U.S. Dist. LEXIS 170034
 (E.D. Mo. Nov. 30, 2012) .....................................................................10, 33, 34

*Goldman v. Tapestry, Inc.*,
 501 F. Supp. 3d 662 (E.D. Mo. 2020) ..............................................................24

*Gregory v. Dillard's, Inc.*,
 565 F.3d 464 (8th Cir. 2009) ...........................................................1, 13, 21, 40

iv

*Hawse v. Page*,
   7 F.4th 685 (8th Cir. 2021) ...................................................................19

*Haywood v. Massage Envy Franchising, LLC*,
   887 F.3d 329 (7th Cir. 2018) ................................................................21

*In re Bisphenol-A (BPA) Polycarbonate Plastic Prods. Liab. Litig.*,
   No. 08-1967-MD-W-ODS, 2011 U.S. Dist. LEXIS 150015
   (W.D. Mo. Dec. 22, 2011) ...............................................................22, 23

*In re Cattle Antitrust Litig.*,
   Civ. No. 19-1222, 2020 U.S. Dist. LEXIS 177526
   (D. Minn. Sept. 28, 2020) ................................................................35, 37

*In re SuperValu, Inc.*,
   925 F.3d 955 (8th Cir. 2019) ................................................................29

*Insulate SB, Inc. v. Advanced Finishing Systems, Inc.*,
   797 F.3d 538 (8th Cir. 2015) ........................................................*passim*

*Interstate Circuit v. United States*,
   306 U.S. 208 (1939) ..............................................................................35

*Kucharski-Berger v. Hill's Pet Nutrition, Inc.*,
   494 P.3d 283 (Kan. Ct. App. 2021) ..............................................*passim*

*Kuhns v. Scottrade, Inc.*,
   868 F.3d 711 (8th Cir. 2017) ................................................................14

*McCall v. Monro Muffler Brake, Inc.*,
   No. 10-269, 2013 U.S. Dist. LEXIS 43233
   (E.D. Mo. Mar. 27, 2013) .............................................18, 20, 22, 23

*Moore v. Mars Petcare US, Inc.*,
   820 F. App'x 573 (9th Cir. 2020) ...........................................39, 41, 42

*Moore v. Mars Petcare US, Inc.*,
   966 F.3d 1007 (9th Cir. 2020) ...................................................9, 29, 31

*Morgan Distrib. Co. v. Unidynamic Corp.*,
   868 F.2d 992 (8th Cir. 1989) ................................................................19

*Moses.com Sec., Inc. v. Comprehensive Software Sys.*,
 406 F.3d 1052 (8th Cir. 2005) ............................................................. 10

*Nettles v. UMB Bank, N.A.*,
 No. 03-00082-CV-W-GAF, 2010 U.S. Dist. LEXIS 160945
 (W.D. Mo. Sept. 13, 2010) ........................................................... 12, 38

*Neubauer v. FedEx Corp.*,
 849 F.3d 400 (8th Cir. 2017) ............................................................... 24

*Oak Bluff Partners, Inc. v. Meyer*,
 3 S.W.3d 777 (Mo. 1999) .................................................................... 34

*OmegaGenesis Corp. v. Mayo Found. for Med. Educ. & Research*,
 851 F.3d 800 (8th Cir. 2017) ......................................................... 14, 21

*Owen v. GMC*,
 533 F.3d 913 (8th Cir. 2008) .................................................... 1, 7, 16

*Owen v. GMC*,
 No. 06-4067-NKL, 2007 U.S. Dist. LEXIS 40748
 (W.D. Mo. June 5, 2007) ............................................................. 18, 23

*Padberg v. DISH Network LLC*,
 No. 11-04035-C-NKL, 2012 U.S. Dist. LEXIS 80543
 (W.D. Mo. June 11, 2012) ................................................................... 21

*Park Irmat Drug Corp. v. Express Scripts Holding Co.*,
 310 F. Supp. 3d 1002 (E.D. Mo. 2018) ............................................... 39

*Park Irmat Drug Corp. v. Express Scripts Holding Co.*,
 911 F.3d 505 (8th Cir. 2018) ........................................... 2, 12, 37, 38

*Quintero Cmty. Ass'n Inc. v. FDIC*,
 792 F.3d 1002 (8th Cir. 2015) ............................................................ 33

*Schulte v. Conopco, Inc.*,
 997 F.3d 823 (8th Cir. 2021) ..................................................... *passim*

*Schulte v. Conopco, Inc.*,
 No. 4:19 CV 2546 RWS, 2020 U.S. Dist. LEXIS 126194
 (E.D. Mo. July 17, 2020) .................................................................... 25

Appellate Case: 22-1796     Page: 8     Date Filed: 07/01/2022 Entry ID: 5173534

*Siegel v. Deutsche Bank Nat. Tr. Co.*,
409 F. App'x 975 (8th Cir. 2011) .......................................................33

*State ex rel. Coca-Cola Co. v. Nixon*,
249 S.W.3d 855 (Mo. 2008) ..........................................................8, 22

*Thompson v. Allergan USA, Inc.*,
993 F. Supp. 2d 1007 (E.D. Mo. 2014) ..............................................24

*UFCW Local 1776 v. Eli Lilly & Co.*,
620 F.3d 121 (2d Cir. 2010) ...............................................................22

*Vanzant v. Hill's Pet Nutrition, Inc.*,
934 F.3d 730 (7th Cir. 2019) ....................................................9, 29, 30

*Warmington v. Bd. of Regents of the Univ. of Minn.*,
998 F.3d 789 (8th Cir. 2021) ........................................................13, 36

*White v. Just Born, Inc.*,
No. 2:17-04025-NKL, 2018 U.S. Dist. LEXIS 132466
(W.D. Mo. Aug. 7, 2018)..............................................................16, 31

*Williams v. First Nat. Bank of St. Louis*,
No. 4:14CV01458 ERW, 2014 U.S. Dist. LEXIS 157519
(E.D. Mo. Nov. 7, 2014) ....................................................................21

*Wullschleger v. Royal Canin U.S.A., Inc.*,
953 F.3d 519 (8th Cir. 2020) ...........................................................1, 3

*Zutz v. Nelson*,
601 F.3d 842 (8th Cir. 2010) ..............................................................22

## FEDERAL STATUTES AND RULES

28 U.S.C. § 1291 ........................................................................................1

Fed. R. Civ. P. 9(b) ............................................................................*passim*

Fed. R. Civ. P.12(b)(6).................................................................1, 4, 13

## STATE STATUTES AND REGULATIONS

11 CSR 30-7.010...................................................................................28

Appellate Case: 22-1796    Page: 9    Date Filed: 07/01/2022 Entry ID: 5173534

815 ILCS 505/1 et seq...........................................................................31

Cal. Civ. Code § 1750 et seq...........................................................31

Cal. Bus. & Prof. Code § 17200 et seq. ......................................31

Cal. Bus. & Prof. Code § 17500 et seq .......................................31

K.S.A. § 50-623 et seq. ....................................................................31

Missouri Merchandising Practices Act, Mo. Rev. Stat., § 407.020 et
    seq. ............................................................................................*passim*

Appellate Case: 22-1796    Page: 10    Date Filed: 07/01/2022  Entry ID: 5173534

## STATEMENT OF JURISDICTION

The district court had federal-question subject-matter jurisdiction over this action because Plaintiffs' state-law claims implicate significant federal issues such that they arise under the laws of the United States. *See Wullschleger v. Royal Canin U.S.A., Inc.*, 953 F.3d 519, 520-22 (8th Cir. 2020) (holding that federal-question jurisdiction exists in this action, and reversing order granting Plaintiffs' first motion to remand to state court); Order Denying Motion to Remand, No. 19-cv-00235-GAF (W.D. Mo.), R. Doc. 62 (denying Plaintiffs' second motion to remand).

The district court dismissed the Amended Complaint for failure to state a claim under Rule 12(b)(6) of the Federal Rules of Civil Procedure and entered judgment against Plaintiffs. This Court has jurisdiction over this appeal from the district court's final decision pursuant to 28 U.S.C. § 1291.

## STATEMENT OF THE ISSUES

Plaintiffs' Statement of the Issues adequately describes the issues presented for review. Pursuant to Eighth Circuit Rule 28A(i)(2), Defendants identify the following as the most apposite authorities:

### Issue I

- *Schulte v. Conopco, Inc.*, 997 F.3d 823 (8th Cir. 2021);
- *Gregory v. Dillard's, Inc.*, 565 F.3d 464 (8th Cir. 2009);
- *Owen v. GMC*, 533 F.3d 913 (8th Cir. 2008); and

1

- Missouri Merchandising Practices Act ("MMPA"), Mo. Rev. Stat., § 407.020 et seq.

**<u>Issue II</u>**

- *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007);

- *Ashcroft v. Iqbal*, 556 U.S. 662 (2009);

- *Insulate SB, Inc. v. Advanced Finishing Systems, Inc.*, 797 F.3d 538 (8th Cir. 2015); and

- *Park Irmat Drug Corp. v. Express Scripts Holding Co.*, 911 F.3d 505 (8th Cir. 2018).

Appellate Case: 22-1796    Page: 12    Date Filed: 07/01/2022 Entry ID: 5173534

## STATEMENT OF THE CASE

### I.  Procedural History

On February 8, 2019, Plaintiffs filed this putative class action in the Circuit Court of Jackson County, Missouri.  *See* No. 4:19-cv-235 (W.D. Mo.), R. Doc. 1. Defendants timely removed the action to the U.S. District Court for the Western District of Missouri.  *Id.*  Following Defendants' appeal of a district court order remanding this case to state court, this Court held that there was federal-question subject-matter jurisdiction, vacated the district court's remand order, and remanded the case to the district court.  *Wullschleger*, 953 F.3d at 520.

Upon return to the district court, on November 11, 2020, Plaintiffs filed an Amended Complaint and again moved for remand to state court.  J App. 14; R. Doc. 43; J App. 9; R. Doc. 44.  The district court denied Plaintiffs' second motion to remand.  R. Doc. 62.

In the Amended Complaint, Plaintiffs seek to represent a class of all Missouri citizens who purchased Prescription Pet Food in Missouri directly or indirectly from Royal Canin or Purina.  Plaintiffs assert three claims:  a violation of the Missouri Merchandising Practices Act ("MMPA") against Royal Canin (Count I); a violation of the MMPA against Purina (Count II); and civil conspiracy against Royal Canin and Purina (Count III).  J App. 39-43, ¶¶ 74-88; R. Doc. 43, at 26-30.

Appellate Case: 22-1796     Page: 13     Date Filed: 07/01/2022  Entry ID: 5173534

On July 6, 2021, Defendants moved to dismiss Plaintiffs' Amended Complaint for failure to state a claim under Rule 12(b)(6) of the Federal Rules of Civil Procedure. R. Doc. 64. On March 22, 2022, the district court granted Defendants' motion and dismissed Plaintiffs' MMPA and civil conspiracy claims. Add. 1; R. Doc. 83. The district court entered judgment the same day. J App. 58; R. Doc. 84.

## II. Plaintiffs' Allegations

Plaintiffs are Missouri pet owners who, on the recommendation of their veterinarians, purchased pet food manufactured by Defendants. J App. 29-30, ¶ 48; R. Doc. 43, at 16-17; J App. 32, ¶ 55; R. Doc. 43, at 19. Plaintiff Wullschleger purchased "Royal Canin Veterinary Diet Hypoallergenic HP Adult dry" dog food "at the recommendation of a veterinarian" for her dog. J App. 17, ¶ 9; R. Doc. 43, at 4; J App. 29-30, ¶ 48; R. Doc. 43, at 16-17. Plaintiff Brewer purchased "Purina Pro Plan Veterinary Diets UR St/Ox Urinary Formula Dry" cat food "[o]n the recommendation of her veterinarians" for her cat. J App. 32, ¶ 55; R. Doc. 43, at 19.

Plaintiffs allege that consumers can buy Prescription Pet Food in one of two ways: They can either buy it directly from a veterinarian or buy it from a retailer after presenting a veterinarian's "prescription." J App. 25, ¶ 31; R. Doc. 43, at 12. Plaintiffs do not allege that Defendants actually use the term "prescription" when

Appellate Case: 22-1796    Page: 14    Date Filed: 07/01/2022 Entry ID: 5173534

referring to the pet food. (For purposes of this brief, Defendants use Plaintiffs' term "Prescription Pet Food," but do not concede that the term is appropriate or accurate.)

Plaintiffs also do not allege that Defendants have ever said that Prescription Pet Food contains a drug. Plaintiffs contend, however, that they believed the food contained a drug because of the veterinarian "prescription" requirement. J App. 14-15, ¶ 1; R. Doc. 43, at 1-2. Despite no longer believing that the food contains a drug, Plaintiffs have not stopped buying the food. Plaintiffs admit in their Amended Complaint — dated nearly two years after they initially filed this lawsuit — that they "continu[e]" to purchase Defendants' Prescription Pet Food "at the recommendation" of their veterinarians and may purchase new Prescription Pet Food if their veterinarians prescribe it. J App. 29-30, ¶ 48; R. Doc. 43, at 16-17; J App. 32, ¶ 55; R. Doc. 43, at 19; J App. 34, ¶ 62; R. Doc. 43, at 21.

Plaintiffs allege that they paid a "premium" for Prescription Pet Food. J App. 14-15, ¶ 1; R. Doc. 43, at 1-2. At the same time, Plaintiffs admit that the Prescription Pet Food business "requires substantial research and development expertise and investment." J App. 23-24, ¶ 27; R. Doc. 43, at 10-11. And, while Plaintiffs assert that Defendants sell "similar" non-prescription pet food, they admit that these "similar" foods contain different ingredients than the Prescription Pet Food that they purchased. *See* J App. 31, ¶¶ 51-52; R. Doc. 43, at 18 (only 66

5

percent overlap in ingredients for allegedly "similar" Royal Canin food); J App. 33, ¶ 59; R. Doc. 43, at 20 (only 74 percent overlap in ingredients for allegedly "similar" Purina food).

According to Plaintiffs, the first manufacturer to sell Prescription Pet Food was non-defendant Hill's Pet Nutrition, Inc. ("Hill's") which has sold its "Prescription Diet" food since the 1960s. J App. 22, ¶ 23; R. Doc. 43, at 9. Hill's was the only or primary seller of Prescription Pet Food in the United States for about four decades. *See* J App. 27-28, ¶ 41; R. Doc. 43, at 14-15. Royal Canin introduced a line of pet food labeled "Royal Canin 'Veterinary Diet'" in approximately 2004. J App. 18, ¶ 14; R. Doc. 43, at 5; J App. 22, ¶ 24; R. Doc. 43, at 9; J App. 27-28, ¶ 41; R. Doc. 43, at 14-15. Purina began selling its own Prescription Pet Food products in or around 2005 and sells such products in packaging labeled "Pro Plan Veterinary Diets." J App. 17-18, ¶ 12; R. Doc. 43, at 4-5; J App. 22, ¶ 24; R. Doc. 43, at 9; J App. 29, ¶¶ 45-46; R. Doc. 43, at 16.

Notwithstanding their admission that Hill's has sold Prescription Pet Food *since the 1960s*, Plaintiffs allege that, Royal Canin and its corporate parent Mars conspired with Hill's, pet retailer PetSmart, and veterinary chain Banfield Pet Hospital to violate the MMPA by requiring a "prescription" for Prescription Pet Food *in March 2005*. J App. 28, ¶ 42; R. Doc. 43, at 15. Plaintiffs allege that

Appellate Case: 22-1796    Page: 16    Date Filed: 07/01/2022 Entry ID: 5173534

Purina joined the conspiracy at some unspecified point thereafter. J App. 29, ¶ 45; R. Doc. 43, at 16.

## SUMMARY OF ARGUMENT

The Amended Complaint does not state an MMPA claim for three key reasons.

*First*, the Amended Complaint does not allege facts plausibly suggesting that an act or statement by either Defendant caused Plaintiffs' alleged damages under the MMPA. *See Owen v. GMC*, 533 F.3d 913, 922 (8th Cir. 2008) ("[C]ausation is a necessary element of an MMPA claim."). Nowhere do Plaintiffs allege they saw or heard any fraudulent advertising, marketing, product labeling, or representations from Defendants. *See* Add. 3; R. Doc. 83, at 3. Instead, Plaintiffs affirmatively allege that they purchased Royal Canin's or Purina's Prescription Pet Food *because their veterinarians recommended it*. *See* J App. 29-30, ¶ 48; R. Doc. 43, at 16-17; J App. 32, ¶ 55; R. Doc. 43, at 19 (alleging Plaintiffs purchased the food "at the recommendation of a veterinarian"). Indeed, Plaintiffs specifically allege that they continue to purchase Defendants' Prescription Pet Food at the recommendation of their veterinarians, despite knowing about the purportedly deceptive prescription requirement. *See* J App. 29-30, ¶ 48; R. Doc. 43, at 16-17; J App. 32, ¶ 55; R. Doc. 43, at 19. These factual allegations not only refute Plaintiffs' conclusory assertions that they would not have purchased the products at

7

allegedly inflated prices had they not been deceived by Defendants' prescription requirement, but also establish that the alleged deception did not cause their purchases. *See* J App. 32, ¶ 54; R. Doc. 43, at 19; J App. 34, ¶ 61; R. Doc. 43, at 21; J App. 39, ¶ 75; R. Doc. 43, at 26; J App. 41, ¶ 81; R. Doc. 43, at 28; *State ex rel. Coca-Cola Co. v. Nixon*, 249 S.W.3d 855, 862 (Mo. banc 2008) (finding that consumers who would continue to purchase product if alleged deception was revealed have not been injured by alleged MMPA violation).

*Second*, while Plaintiffs contend that they suffered an ascertainable loss because the prescription requirement creates an alleged price premium (Br. 35), Plaintiffs' own factual allegations belie that assertion. The Amended Complaint specifically alleges that Prescription Pet Food requires substantial investments in research and development, a separate sales force, and a separate distribution network. *See* J App. 23-24, ¶ 27; R. Doc. 43, at 10-11. Additionally, Plaintiffs allege that the ingredients in Prescription Pet Food differ from those in non-prescription pet food in both type and quantity. *See* J App. 30-31, ¶¶ 49-52; R. Doc. 43, at 17-18; J App. 32-33, ¶¶ 55-59; R. Doc. 43, at 19-20. Plaintiffs' payment of higher prices reflects nothing more than their purchase of a distinct product — not that they were misled into purchasing an artificially overpriced pet food product. *See Schulte v. Conopco, Inc.*, 997 F.3d 823, 826-27 (8th Cir. 2021) (affirming dismissal of MMPA claim alleging antiperspirant product for women

Appellate Case: 22-1796    Page: 18    Date Filed: 07/01/2022 Entry ID: 5173534

was more expensive than antiperspirant product for men with similar ingredients). Accordingly, by Plaintiffs' own allegations, they suffered no damage as a result of Defendants' alleged conduct.

*Third*, Plaintiffs fail to plead with particularity that the "prescription requirement" deceives or misleads reasonable consumers. There is no dispute that the pet food at issue is marketed and labeled as "food." Plaintiffs plead no facts plausibly suggesting that a reasonable consumer would assume the prescription requirement means that pet *food* contains drugs or has approval from the Food and Drug Administration ("FDA"). This is particularly true given the commonplace use of the term "prescription" to refer to non-drug products, such as certain types of sunglasses. The prescription requirement is not a "self-imposed sham" as Plaintiffs contend (*see* Br. 13), but rather a safeguard that protects pet owners, and their pets, by ensuring that pet owners consult their veterinarians before purchasing and feeding certain types of pet food to their pets.

Rather than addressing their pleading deficiencies, Plaintiffs instead urge this Court to adopt the reasoning of three other pet food cases from other courts: *Moore v. Mars Petcare US, Inc.*, 966 F.3d 1007 (9th Cir. 2020) (California state-law claims), *Vanzant v. Hill's Pet Nutrition, Inc.*, 934 F.3d 730 (7th Cir. 2019) (Illinois state-law claims), and *Kucharski-Berger v. Hill's Pet Nutrition, Inc.*, 494 P.3d 283 (Kan. Ct. App. 2021) (Kansas state-law claims). *See* Br. 24-25,

28-31. Plaintiffs entirely ignore that plaintiffs in those cases not only alleged meaningfully different facts (e.g., lack the allegation that they continue to buy prescription pet food notwithstanding awareness that the prescription requirement is allegedly a "sham"), but also brought their claims under different state laws. None of those decisions involved an MMPA claim, whose elements differ from those required for consumer-protection claims under California, Illinois, or Kansas law. Notwithstanding Plaintiffs' heavy reliance on *Moore*, *Vanzant*, and *Kucharski-Berger* (*see* Br. 24-25, 28-31), those cases do not cure Plaintiffs' inability to allege sufficient facts for their own, legally and factually distinct, claims.

Plaintiffs' failure to plead an MMPA claim also dooms their claim for civil conspiracy under Missouri common law, as they base their conspiracy claim on the supposedly wrongful conduct in violation of the MMPA. In addition, the civil conspiracy claim falls short because Plaintiffs do not allege facts sufficient to plausibly suggest a "meeting of the minds" among Defendants and alleged co-conspirators. *See Moses.com Sec., Inc. v. Comprehensive Software Sys.*, 406 F.3d 1052, 1063-64 (8th Cir. 2005) (affirming dismissal of Missouri civil conspiracy claim because plaintiff failed to adequately plead a meeting of the minds); *Cridlebaugh v. Citimortgage, Inc.*, No. 12-6078-SJ-ODS, 2012 U.S. Dist. LEXIS 170034, at *5-6 (E.D. Mo. Nov. 30, 2012) (dismissing claim where allegations did

not "show more than the *mere possibility* that there was a meeting of the minds" (emphasis added)). Plaintiffs' threadbare and conclusory allegations of an agreement or a "combination" — while relentlessly repeated in the Amended Complaint — do not suggest a plausible conspiracy. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007) ("[A] conclusory allegation of agreement at some unidentified point does not supply facts adequate to show illegality").

Far from pleading a plausible conspiracy, Plaintiffs' allegations reflect that the prescription requirement is a rational, market-driven practice adopted independently by pet food manufacturers at separate times over a four-decade period, to ensure that pet owners consult with a veterinarian before feeding their pet certain diets. *See* J App. 22, ¶ 23; R. Doc. 43, at 9; J App. 27-29, ¶¶ 41, 45; R. Doc. 43, at 14-16. Notwithstanding Plaintiffs' suggestion to the contrary (Br. 51), this Court need not ignore "obvious alternative explanation[s]" for conduct that Plaintiffs cast as conspiratorial. *See Twombly*, 550 U.S. at 567-68.

Plaintiffs' conspiracy claim is further contradicted by the Amended Complaint's allegations that there are other Prescription Pet Food manufacturers and retailers, not alleged to be part of the purported conspiracy, who use and enforce the prescription requirement. *See* J App. 19-20, ¶ 16; R. Doc. 43, at 6-7; J App. 23-24, ¶ 27; R. Doc. 43, at 10-11; J App. 32, ¶ 55; R. Doc. 43, at 19. Plaintiffs' allegations that Hill's, Royal Canin, and Purina each separately began

11

manufacturing Prescription Pet Food at various times over a four-decade period (J App. 27-29, ¶¶ 41, 45-46; R. Doc. 43, at 14-16) do not plausibly suggest a conspiracy. *See Park Irmat Drug Corp. v. Express Scripts Holding Co.*, 911 F.3d 505, 516-17 (8th Cir. 2018) (affirming dismissal because allegations that "lack[ed] temporal proximity" failed to plausibly suggest conspiratorial conduct). Putting aside that all of the various manufacturers of Prescription Pet Food introduced their products at different times, Plaintiffs' allegations are at most suggestive of parallel conduct, which is insufficient to plead a plausible conspiracy. *See Twombly*, 550 U.S. at 556-57 ("Without more, parallel conduct does not suggest conspiracy . . . ."); *Insulate SB, Inc. v. Adv. Finishing Sys., Inc.*, 797 F.3d 538, 544 (8th Cir. 2015) (explaining that "[p]leading only 'parallel conduct' or other conduct 'merely *consistent with* [an] agreement'" is insufficient for conspiracy); *Nettles v. UMB Bank, N.A.*, No. 03-00082-CV-W-GAF, 2010 U.S. Dist. LEXIS 160945, at *9-10 (W.D. Mo. Sept. 13, 2010) (dismissing Missouri civil conspiracy claim where facts alleged "might also be equally attributable to lawful parallel conduct").

Accordingly, this Court should affirm the district court's order dismissing Plaintiffs' MMPA and civil conspiracy claims.

# ARGUMENT

The Court reviews de novo a district court's order granting a motion to dismiss for failure to state a claim upon which relief can be granted under Rule 12(b)(6) of the Federal Rules of Civil Procedure. *Warmington v. Bd. of Regents of the Univ. of Minn.*, 998 F.3d 789, 795 (8th Cir. 2021). This standard applies to this Court's review of the dismissal of Plaintiffs' MMPA and civil conspiracy claims.

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). The complaint must allege "more than a sheer possibility that a defendant has acted unlawfully." *Id.* A plaintiff's factual allegations must "'nudg[e] his claim . . . 'across the line from conceivable to plausible.'" *Id.* at 683 (quoting *Twombly,* 550 U.S. at 570). Stating a claim "requires more than labels and conclusions" (*Twombly*, 550 U.S. at 555), and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" (*Iqbal*, 556 U.S. at 678). "The court is 'not bound to accept as true a legal conclusion couched as a factual allegation.'" *Warmington*, 998 F.3d at 796 (quoting *Iqbal*, 556 U.S. at 678)).

A plaintiff "must assert facts that affirmatively and plausibly suggest" a right to relief, "rather than facts that are merely consistent with such a right." *Gregory*

Appellate Case: 22-1796     Page: 23     Date Filed: 07/01/2022 Entry ID: 5173534

*v. Dillard's, Inc.*, 565 F.3d 464, 472 (8th Cir. 2009) (quotations omitted). A court "is not required 'to divine the litigant's intent and create claims that are not clearly raised,' and it need not 'conjure up unpled allegations' to save a complaint." *Id.* (citations omitted). Although "reasonable inferences" are construed in favor of the plaintiff (*Braden v. Wal-Mart Stores, Inc.*, 588 F.3d 585, 598 (8th Cir. 2009)), a court "draw[s] on its judicial experience and common sense" in assessing plausibility (*Iqbal*, 556 U.S. at 679). Failure to adequately plead factual allegations supporting each element of each cause of action warrants dismissal. *See, e.g.*, *OmegaGenesis Corp. v. Mayo Found. for Med. Educ. & Research*, 851 F.3d 800, 804 (8th Cir. 2017) (upholding dismissal where district court found the complaint did not adequately plead each element).

Claims sounding in fraud, such as Plaintiffs' MMPA claims, must also satisfy Rule 9(b)'s heightened pleading requirement. *See Kuhns v. Scottrade, Inc.*, 868 F.3d 711, 719 (8th Cir. 2017); *OmegaGenesis Corp.*, 851 F.3d at 804, 807. Likewise, because it is predicated on an alleged violation of the MMPA, Plaintiffs' civil conspiracy claim must be pleaded with particularity under Rule 9(b). *See Arnold v. AT&T, Inc.*, No. 4:10-2429-SNLJ, 2012 U.S. Dist. LEXIS 58512, at *29 (E.D. Mo. Apr. 26, 2012).

**I. The District Court Correctly Determined that the Amended Complaint Fails to State an MMPA Claim**

**A. There Are Insufficient Factual Allegations to Support Plaintiffs' MMPA Claims**

"To establish a claim under the MMPA, a plaintiff must show that she (1) leased or purchased a product or service from defendant; (2) primarily for personal, family, or household purposes; and (3) suffered an ascertainable loss of money or property; (4) as a result of an act declared unlawful by" the MMPA. *Schulte*, 997 F.3d at 825-26. "When there is 'no evidence of a course of conduct . . . that would amount to fraud or deception,' MMPA complaints can be dismissed." *Id.* at 826 (quoting *Kiechle v. Drago*, 694 S.W.2d 292, 294 (Mo. App. 1985)). Contrary to Plaintiffs' assertions (*see* Br. 30-42), the Amended Complaint's threadbare and conclusory allegations fail to state a claim for a violation of the MMPA against either Royal Canin or Purina.

Plaintiffs' MMPA claims fail for three independently sufficient reasons. First, Plaintiffs' allegations show that they bought the pet food because their veterinarians recommended it, not because of Defendants' allegedly wrongful conduct. Second, Plaintiffs fail to identify any "ascertainable loss" — instead, they admit that they paid for a product that costs more to develop than ordinary pet food. Third, Plaintiffs fail to allege that the requirement of a veterinary

recommendation (or "prescription") amounts to fraud or deception as such requirement does not amount to fraud or deception.

### 1. Plaintiffs Fail to Plead that Defendants' Alleged MMPA Violations Caused Their Injuries

Plaintiffs' MMPA claims fall short because Plaintiffs do not allege facts plausibly suggesting that an unlawful act or statement by *Defendants* caused Plaintiffs' alleged damages. Rather, the allegations reflect that Plaintiffs bought Prescription Pet Food at the recommendation of their veterinarians. *See* J App. 17, ¶¶ 9-10; R. Doc. 43, at 4; J App. 29-30, ¶ 48; R. Doc. 43, at 16-17; J App. 32, ¶ 55; R. Doc. 43, at 19. Because Plaintiffs failed to plead causation, the district court correctly dismissed their MMPA claims. *See* Add. 8-9; R. Doc. 83, at 8-9; *Owen*, 533 F.3d at 922 ("[C]ausation is a necessary element of an MMPA claim"); *White v. Just Born, Inc.*, No. 2:17-04025-NKL, 2018 U.S. Dist. LEXIS 132466, at *7 (W.D. Mo. Aug. 7, 2018) ("Thus, even where an MMPA violation occurs, if it does not *cause* an ascertainable loss of money or property—i.e. an injury—a plaintiff cannot sue for the violation.").

Plaintiffs argue that Defendants violated the MMPA by requiring a veterinarian's recommendation as a precondition for sale of their pet food — a requirement that Plaintiffs label "the sham prescription requirement." Br. 34. In order to plead causation, Plaintiffs had to plead facts showing that this "sham prescription requirement" caused them to purchase Defendants' pet food.

Plaintiffs did not plead the facts necessary to allege causation. To the contrary, the facts pleaded by Plaintiffs show that the "sham prescription requirement" had no effect whatsoever on their decision to purchase the pet food.

Plaintiffs affirmatively allege that they purchased the Prescription Pet Food because their veterinarians recommended and prescribed the products. *See* J App. 17, ¶¶ 9-10; R. Doc. 43, at 4; J App. 29-30, ¶ 48; R. Doc. 43, at 16-17; J App. 32, ¶ 55; R. Doc. 43, at 19 (alleging Plaintiffs purchased the food "at the recommendation of" their veterinarians). Critically, Plaintiffs also admit that they "ha[ve] continued" to purchase Prescription Pet Food "at the recommendations" of their veterinarians, and "are currently feeding their pets Prescription Pet Food." J App. 29-30, ¶ 48; R. Doc. 43, at 16-17; J App. 32, ¶ 55; R. Doc. 43, at 19; J App. 34, ¶ 62; R. Doc. 43, at 21. And Plaintiffs admit that they would, in the future, buy "a new Prescription Pet Food" "if their veterinarians prescribe" it. J App. 34, ¶ 62; R. Doc. 43, at 21. These admissions are crucial because they were made nearly two years after Plaintiffs' initiated this lawsuit, at which point they necessarily were aware that the "prescription requirement" is a purported "sham." *Compare* No. 4:19-cv-235 (W.D. Mo.), R. Doc. 1 (original Petition dated February 8, 2019), *with* J App. 44; R. Doc. 43 (Amended Complaint dated November 11, 2020).

In other words, Plaintiffs admit that — even though they have known for years that Prescription Pet Food allegedly is not legally required to be sold by

prescription, is not evaluated or approved by FDA, and does not contain a medicine or drug — they continue to purchase Prescription Pet Food and would purchase it again in the future. *See* J App. 34, ¶ 62; R. Doc. 43, at 21. The district court correctly recognized that these admissions doom Plaintiffs' claims. Add. 8-9; R. Doc. 83, at 8-9. Where, as here, the plaintiffs' allegations show that they "'knew about' an alleged MMPA violation and 'purchased . . . [the] products anyway,' or 'did not care,'" the plaintiffs are "not injured" by the alleged MMPA violation. Add. 8; R. Doc. 83, at 8 (quoting *Coca-Cola Co.*, 249 S.W.3d at 862); *see also id.* (citing *Bratton v. Hershey Co.*, No. 2:16-cv-4322-C-NKL, 2018 U.S. Dist. LEXIS 26031, at *6-7 (W.D. Mo. Feb. 16, 2018), *aff'd*, 533 F.3d 913 (8th Cir. 2008); *Owen v. GMC*, No. 06-4067-NKL, 2007 U.S. Dist. LEXIS 40748, at *13 (W.D. Mo. June 5, 2007), *aff'd*, 533 F.3d 913 (8th Cir. 2008); *McCall v. Monro Muffler Brake, Inc.*, No. 10-269, 2013 U.S. Dist. LEXIS 43233, at *15 (E.D. Mo. Mar. 27, 2013)). Plaintiffs' affirmative allegations that they purchased Defendants' pet food because their veterinarians recommended it, coupled with their admissions that their alleged discovery of the "sham prescription requirement" has not affected their willingness to buy Defendants' pet food, demonstrate that the prescription requirement did not cause them to buy Defendants' pet food.

18

Plaintiffs offer three arguments for why this Court should depart from the district court's analysis. None has merit. *First*, Plaintiffs argue that their continued purchase of Prescription Pet Food can be explained because "their pets have developed a dependence on the Prescription Pet Food." *See* Br. 34-35. This contention is both unsupported and nonsensical. There is no factual material in the Amended Complaint suggesting that Prescription Pet Food causes dependence. Indeed, Plaintiffs allege that Defendants' pet food contains no drugs; it is implausible that food containing no drugs induces "dependence." Plaintiffs cite their alleged "reluctan[ce] to change their pets' diets abruptly" (Br. 35 (citing J App. 34, ¶ 62; R. Doc. 43, at 21)), but an owner's reluctance is a far cry from a pet's dependence. Nor is it plausible that Plaintiffs would be willing to buy "a *new* Prescription Pet Food" (J App. 34, ¶ 62; R. Doc. 43, at 21 (emphasis added)) in the future if Defendants' food had such dependence-inducing effects. At any rate, Plaintiffs' new argument of dependence cannot support their MMPA claims because there are no such allegations in the Amended Complaint. *See Hawse v. Page*, 7 F.4th 685, 691 (8th Cir. 2021) (affirming district court's ruling that "[plaintiffs] could not amend their complaint, or supplement insufficient factual allegations" in briefing); *Morgan Distrib. Co. v. Unidynamic Corp.*, 868 F.2d 992, 995 (8th Cir. 1989) (explaining a complaint cannot be amended by briefing).

Appellate Case: 22-1796    Page: 29    Date Filed: 07/01/2022 Entry ID: 5173534

*Second*, Plaintiffs argue that the district court "impermissibly drew an adverse inference" against them. Br. 35-36. Plaintiffs' argument misconstrues the district court's analysis. Far from drawing adverse inferences against Plaintiffs, the district court appropriately disregarded Plaintiffs' conclusory allegations, and found a lack of factual allegations stating a plausible MMPA claim.

The Amended Complaint is conspicuously devoid of factual allegations suggesting the prescription requirement — as opposed to veterinarians' recommendations — caused Plaintiffs to buy the pet food at issue. Nowhere do Plaintiffs allege that they observed any of either Defendant's product labels or marketing materials. *See McCall*, 2013 U.S. Dist. LEXIS 43233, at *15 (determining plaintiffs "could not have been mislead" under the MMPA because they "did not see, read or know about" the purported deceptive practice "prior to their purchase"). While Plaintiffs allege they understood from their veterinarians that prescriptions were required at the time of purchase (*see* J App. 30, ¶ 49; R. Doc. 43, at 17; J App. 32-33, ¶ 56; R. Doc. 43, at 19-20), neither Plaintiff alleges facts that plausibly suggest she purchased pet food *because of* the prescription requirement.

Plaintiffs point out (Br. 33-34) that the Amended Complaint alleges that each Plaintiff "observed that the Prescription Pet Food was shelved in a section of the PetSmart store separate and distinct from the sections containing non-

Appellate Case: 22-1796    Page: 30    Date Filed: 07/01/2022 Entry ID: 5173534

prescription pet food, and that signs in the Prescription Pet Food section advised that a prescription and MedCard from Banfield were required to purchase Prescription Pet Food." J App. 30, ¶ 49; R. Doc. 43, at 17; J App. 32-33, ¶ 56; R. Doc. 43, at 19-20. But, again, these allegations do not plausibly suggest the *prescription requirement* caused Plaintiffs to purchase Defendants' pet food. *See Padberg v. DISH Network LLC*, No. 11-04035-C-NKL, 2012 U.S. Dist. LEXIS 80543, at *17-18 (W.D. Mo. June 11, 2012) (dismissing MMPA claim "arising from representations made in Dish Network's advertisements" due to "intervening factor" of plaintiff reading and signing a separate contract); *see also Haywood v. Massage Envy Franchising, LLC*, 887 F.3d 329, 335-36 (7th Cir. 2018) (affirming dismissal of MMPA claim because the allegations gave "no indication that it was Massage Envy's deceptive advertisement that led [plaintiff] to book a massage"). This Court is not required to "'conjure up unpled allegations' to save [Plaintiffs'] complaint." *Gregory*, 565 F.3d at 472 (citations omitted). Nor should this Court draw inferences from Plaintiffs' allegations that are contradicted by the Amended Complaint itself. *E.g.*, *Williams v. First Nat. Bank of St. Louis*, No. 4:14CV01458 ERW, 2014 U.S. Dist. LEXIS 157519, at *10-11 (E.D. Mo. Nov. 7, 2014) (citing cases from the Second, Sixth, and D.C. Circuits); *see OmegaGenesis Corp. v. Mayo Found. for Med. Educ. & Rsch.*, 851 F.3d 800, 807 (8th Cir. 2017)

(disregarding, on motion to dismiss, plaintiffs' "general, conclusory allegation of reasonable reliance" that was "contradict[ed]" by other facts).

There are simply no factual allegations plausibly suggesting that something *Defendants* did or said caused Plaintiffs' purchases of Prescription Pet Food. *See Zutz v. Nelson*, 601 F.3d 842, 852 (8th Cir. 2010) ("*Twombly* does not require [the court] to divine what is in the mind of the plaintiff," but rather it "must look to the pleadings and discern whether the complaint states enough facts that plausibly leads to a cause of action"); *see also UFCW Local 1776 v. Eli Lilly & Co.*, 620 F.3d 121, 134 (2d Cir. 2010) (finding no causation because plaintiffs' "theory of liability rests on the independent actions of third and even fourth parties" (citation omitted)). Indeed, there are substantial allegations showing otherwise.

*Third*, Plaintiffs argue this Court should disregard cases relied upon by the district court because those cases were decided at the summary judgment or class certification stages. *See* Br. 38. Plaintiffs ignore that these cases — *Coca-Cola*, *Bisphenol-A*, *Bratton*, *Owen*, and *McCall* (Add. 8; R. Doc. 83, at 8) — provide clear rules applicable at all stages of a case: a plaintiff incurs no injury if he or she would have purchased the product anyway or could not have been misled by the purportedly deceptive practice. *See Coca-Cola*, 249 S.W.3d at 862 (finding consumers who "did not care whether the Diet Coke they purchased contained saccharin" did not suffer any injury under the MMPA); *In re Bisphenol-A (BPA)*

Appellate Case: 22-1796    Page: 32    Date Filed: 07/01/2022 Entry ID: 5173534

*Polycarbonate Plastic Prods. Liab. Litig.*, No. 08-1967-MD-W-ODS, 2011 U.S. Dist. LEXIS 150015, at *3 (W.D. Mo. Dec. 22, 2011) (concluding "consumers who knew about BPA and purchased Defendants' products anyway suffered no injury" under the MMPA); *Bratton*, 2018 U.S. Dist. LEXIS 26031, at *6-7 (finding plaintiff who was "aware of approximately how much candy and how much empty space was in each box," but "nonetheless continued to purchase the boxes . . . cannot demonstrate that [he] was injured" under the MMPA); *Owen*, 2007 U.S. Dist. LEXIS 40748, at *13 (holding plaintiffs did not satisfy the MMPA's causation requirement where plaintiffs failed to show "they would not have purchased their [vehicle] had GM told them of the potential defect"); *McCall,* 2013 U.S. Dist. LEXIS 43233, at *15 (finding, where plaintiffs "did not see, read or know about the description of the [fees] prior to their purchase," they "could not have been mislead by [defendant's] disclosures").

Plaintiffs' continued willingness to buy Prescription Pet Food at their veterinarians' recommendations — even after allegedly believing the "prescription requirement" is a purported "sham" — shows that Plaintiffs have bought and continue to buy Prescription Pet Food not because they have been deceived, but because they "trust" their veterinarians and are "willing[] to follow doctor's orders to their fullest extent."  J App. 16, ¶ 6; R. Doc. 43, at 3; J App. 24-25, ¶ 30; R. Doc. 43, at 11-12.  The district court correctly held the Amended Complaint fails

Appellate Case: 22-1796     Page: 33     Date Filed: 07/01/2022 Entry ID: 5173534

to allege facts plausibly suggesting the prescription requirement caused Plaintiffs' damages.  *See* Add. 8-9; R. Doc. 83, at 8-9.

###### 2. Plaintiffs Do Not Allege Facts Supporting a Plausible Claim that the Prices They Paid for Defendants' Pet Food Constitute Ascertainable Loss

For Plaintiffs to recover under the MMPA, they must show that they suffered ascertainable loss.  *Schulte*, 997 F.3d at 825-26.  Plaintiffs contend that they suffered ascertainable loss because they paid an "inflated unjustified price premium" for Prescription Pet Food.  Br. 35.  This conclusory allegation does not sufficiently allege ascertainable loss.  While Defendants are not aware of any Eighth Circuit cases addressing in detail the requirements for pleading "ascertainable loss," some district court cases apply Eighth Circuit pleading requirements to find that plaintiffs' conclusory "allegations that [they] purchased items that were worth less than advertised" do not "meet the Rule 9(b) pleading standard for claims sounding in fraud."  *Goldman v. Tapestry, Inc.*, 501 F. Supp. 3d 662, 669 (E.D. Mo. 2020); *see also Thompson v. Allergan USA, Inc.*, 993 F. Supp. 2d 1007, 1012 (E.D. Mo. 2014); *cf. Neubauer v. FedEx Corp.*, 849 F.3d 400, 406-07 (8th Cir. 2017) (conclusory allegations fail to meet heightened Rule 9(b) standard).

Plaintiffs allege that the Prescription Pet Food they purchased costs more than other, non-prescription pet food.  *See* J App. 15-16, ¶¶ 4-5; R. Doc. 43, at 2-3;

J App. 16-17, ¶ 8; R. Doc. 43, at 3-4; J App. 30-32, ¶¶ 50-54; R. Doc. 43, at 17-19; J App. 33-34, ¶¶ 57-61; R. Doc. 43, at 20-21; J App. 40, ¶ 77; R. Doc. 43, at 27; J App. 41, ¶ 83; R. Doc. 43, at 28. But Plaintiffs contradict their own conclusory allegations with specific factual allegations about material differences between the different types of pet food. Plaintiffs allege there is a 66 percent to 74 percent overlap of ingredients in prescription and non-prescription pet food. J App. 31, ¶ 52; R. Doc. 43, at 18; J App. 33, ¶ 59; R. Doc. 43, at 20. Stated differently, 26 percent to 34 percent of the ingredients are different, meaning that there are, in fact, appreciable differences between the two products. Plaintiffs do not allege which ingredients do (or do not) overlap, and to what extent they overlap. *See* J App. 30-31, ¶¶ 49-52; R. Doc. 43, at 17-18; J App. 32-33, ¶¶ 55-59; R. Doc. 43, at 19-20. Plaintiffs cannot satisfy the requirement of pleading ascertainable loss by pointing to the existence of a different product with different ingredients sold at a different price. *See Schulte*, 997 F.3d at 825, 826-27 (affirming dismissal for failure to state an MMPA claim where deodorant products contained "similar, but not identical" ingredients, but were marketed to men and women separately and sold at different prices). Indeed, "[i]n MMPA disputes over product pricing 'the courts are not regulators of the fair market price of products.'" *Schulte v. Conopco, Inc.*, No. 4:19 CV 2546 RWS, 2020 U.S. Dist. LEXIS 126194, at *9 (E.D. Mo. July 17, 2020) (citation omitted), *aff'd*, 997 F.3d 823 (8th Cir. 2021).

Plaintiffs further undermine their conclusory assertions of an "inflated unjustified price premium" by alleging that the Prescription Pet Food business requires substantial investments in research and development, a separate sales force, and a separate distribution network.  J App. 23-24, ¶ 27; R. Doc. 43, at 10-11.  Plaintiffs have therefore failed to plausibly allege there was any "inflated unjustified price premium" associated with the pet foods they purchased.  As this Court has recognized, a plaintiff "cannot plausibly allege [an MMPA claim] using only retail price differences without plausibly alleging that the *only* difference between the products" is allegedly unfair conduct.  *See Schulte*, 997 F.3d at 826-27.

### 3. Plaintiffs Do Not Allege Facts Supporting a Plausible Claim that the "Prescription Requirement" Amounts to Fraud or Deception

Plaintiffs also fail to plead with particularity that the "prescription requirement" is an "unfair practice" under the MMPA because their allegations do not establish that requiring veterinarian authorization "amount[s] to fraud or deception."  *Schulte*, 997 F.3d at 826 (quoting *Kiechle v. Drago*, 694 S.W.2d 292, 294 (Mo. App. 1985)).

To be clear, Plaintiffs do not allege that Defendants (or anyone else) have ever said that their pet food contains medicine or drugs approved by FDA. Plaintiffs' MMPA claims are thus based on the inferences that they allege

Appellate Case: 22-1796     Page: 36     Date Filed: 07/01/2022 Entry ID: 5173534

consumers draw from the manner in which the pet food may be purchased: either from veterinarians directly or from retailers after presenting a veterinarian's "prescription." J App. 25, ¶ 31; R. Doc. 43, at 12. But Plaintiffs allege no facts plausibly suggesting that requiring advanced veterinary authorization for certain pet foods deceives consumers into believing that the pet food contains medicine or drugs approved by FDA. *See* Br. 15; J App. 30, ¶ 49; R. Doc. 43, at 17; J App. 32-33, ¶ 56; R. Doc. 43, at 19-20. The Amended Complaint lacks any factual allegations showing how or why Plaintiffs would make these assumptions. Indeed, the factual allegations show a reasonable consumer would not make such assumptions. Food labeled as "food" or "diet" (not "drug" or "medicine") and whose packaging, including an ingredient list, discloses no drugs or medicine, cannot reasonably be understood as "ha[ving] medicinal and drug properties" and as having been accordingly "tested and approved by [FDA]." J App. 14-15, ¶ 1; R. Doc. 43, at 1-2; J App. 16, ¶ 5; R. Doc. 43, at 3; *see Iqbal*, 556 U.S. at 679 (explaining courts draw on their "judicial experience and common sense" in determining whether factual allegations are plausible).

Indeed, many products that are not drugs or medicines are sold by "prescription." For example, common experience demonstrates that "prescriptions" are used for products — including glasses and sunglasses — which obviously are not drugs or medicines. A Missouri regulation even requires a

Appellate Case: 22-1796    Page: 37    Date Filed: 07/01/2022 Entry ID: 5173534

"prescription" for window tint. *See* 11 CSR 30-7.010. In addition, Missouri's Women, Infants, and Children ("WIC") program refers to food items that a recipient may purchase as a "food prescription." *See* Mo. Dep't of Health and Senior Servs., *WIC operations continue in Missouri* (Mar. 24, 2020), https://health.mo.gov/news/newsitem/uuid/f4fb14f7-e010-4710-8faf-39a795863686. And there are programs through which doctors write food "prescriptions" to their patients. *See* Sarah Fentem, *Food Prescription Program Sends Groceries to Pregnant Moms in Need*, St. Louis Public Radio (Feb. 4, 2019), https://news.stlpublicradio.org/health-science-environment/2019-02-04/food-prescription-program-sends-groceries-to-pregnant-moms-in-need.

As Plaintiffs' allegations make clear, the "prescription requirement" is simply a mechanism for ensuring that pets consume the food under the supervision of a veterinarian. *See Chochorowski v. Home Depot U.S.A.*, 404 S.W.3d 220, 226 (Mo. banc 2013) ("The MMPA was enacted by the legislature to protect consumers." (citation omitted)). Requiring veterinary supervision for specialized pet food with potential benefits (and potential risks of feeding pets unbalanced diets) fulfills the MMPA's purpose by *increasing* protection for consumers, not misleading them. Indeed, the requirement ensures a veterinarian has determined the particular pet food is an appropriate part of a pet's treatment plan.

28

There is no dispute that Defendants' pet food is marketed and sold as food. Experience and common sense reflect that products marketed and sold as food are not drugs, and drugs are not marketed and sold as food. The requirement of a veterinarian's recommendation would not cause a reasonable person to believe that a pet food is not food but instead a drug. *See In re SuperValu, Inc.*, 925 F.3d 955, 965 (8th Cir. 2019) (affirming dismissal of plaintiff's consumer protection claims and refusing to "draw from [plaintiff's] conspicuous omission an inference that runs counter to established law and common experience" because courts "are not required to draw unreasonable inferences in [plaintiff's] favor"). Accordingly, this Court should hold that, as a matter of law, by Plaintiffs' allegations, the prescription requirement is not an "unfair practice" in violation of the MMPA.

**B.** **Decisions in Other Courts Involving Different State-Law Claims Do Not Save Plaintiffs' Deficient MMPA Claims**

Plaintiffs urge this Court to reverse the district court's dismissal of their MMPA claims because other appellate courts have permitted other Prescription Pet Food cases to go forward. *See* Br. 28-30, 36-37 (citing *Moore*, 966 F.3d 1007 (California state-law claims), *Vanzant*, 934 F.3d 730 (Illinois state-law claims), and *Kucharski-Berger*, 494 P.3d 283 (Kansas state-law claims)). Those non-controlling cases are readily distinguishable from the present action because they address different state laws and involve factual allegations meaningfully different from those in Plaintiffs' Amended Complaint.

Appellate Case: 22-1796    Page: 39    Date Filed: 07/01/2022 Entry ID: 5173534

*First*, all three cases contain different allegations than those made by Plaintiffs in this case with regard to Defendants' alleged deceptive acts. As an initial matter, neither Defendant in this action is a party to *Vanzant* or *Kucharski-Berger*. *See Vanzant*, 934 F.3d 730; *Kucharski-Berger*, 494 P.3d 283. Moreover, neither *Moore* nor *Vanzant* evaluates whether the plaintiffs made the types of admissions (e.g., willingness to buy "new Prescription Pet Food" in the future) that are fatal to Plaintiffs' claims here. And plaintiffs in those cases made allegations absent from Plaintiffs' Amended Complaint. For example, the *Moore* plaintiffs alleged they "observed the label" on Hill's pet food packaging saying "Prescription Diet" "*prior* to purchasing these products." *Moore*, No. 3:16-cv-07001-MMC, ECF No. 116 at 44 (emphasis added). Similarly, the *Vanzant* plaintiffs alleged they saw Hill's marketing materials for "Prescription Diet" *before* purchasing the food. *See, e.g.*, Case No. 1:17-cv-02535, ECF No. 43 at 14 (stating "[p]rior to the first time" plaintiff purchased the prescribed pet food, she "saw marketing materials indicating that the cat food she was purchasing was 'prescription only,' including the label on the bag stating that the cat food was 'Prescription Diet'"). Here, the district court correctly recognized that, unlike in *Moore* and *Vanzant*, "[i]n this case, Plaintiffs do not allege they saw any of Defendants' advertising, marketing, labeling, packaging, or representations before purchasing the food." *See* Add. 7; R. Doc. 83, at 7. While Plaintiffs claim that the district court

"mischaracterizes [their] allegations," the allegations they cite contain no facts contradicting the district court's conclusion. *See* Br. 33. Accordingly, Plaintiffs allege no facts that suggest *Defendants'* conduct or statements caused their alleged injuries.

*Second*, none of those decisions addressed the requirements for pleading an MMPA claim. Rather, they involved claims based on California's Unfair Competition Law, Bus. & Prof. Code § 17200 *et seq.*, California's False Advertising Law, Bus. & Prof. Code § 17500 *et seq.*, California's Consumer Legal Remedies Act, Civ. Code § 1750 *et seq.*, Illinois Consumer Fraud and Deceptive Business Practices Act, 815 ILCS 505/1 *et seq.*, and the Kansas Consumer Protection Act, K.S.A. § 50-623 *et seq.* Notwithstanding Plaintiffs' assertion that those other cases involved "similarly broad statutes" (Br. 29), the elements of those consumer-protection statutes are different than the MMPA.

For example, as the court in *Moore* held, pleading actual reliance for the California claims could be inferred from the existence of a misrepresentation. *See Moore*, 966 F.3d at 1021. By contrast, under Missouri law, Plaintiffs must allege that Defendants' purported MMPA violations *directly caused* their injuries. *See White,* 2018 U.S. Dist. LEXIS 132466, at *7 (citing Mo. Approved Instructions (Civil) 39.01 (7th ed.)); *accord* Mo. Approved Jury Instr. (Civil) 39.01 (8th ed.) ("as a *direct result* of such conduct, plaintiff sustained damage" (emphasis added)).

31

Plaintiffs' allegations that their veterinarians' recommendations (not the prescription requirement) caused them to purchase Defendants' products establish a lack of causation under Missouri law.

The Kansas court of appeals' decision in *Kucharski-Berger* similarly does not cure Plaintiffs' pleading deficiencies because Kansas law has different requirements from Missouri law. For example, the Kansas law allows a finding that an act was deceptive regardless of whether any consumer was misled. *See Kucharski-Berger*, 494 P.3d at 289. Accordingly, the *Kucharski-Berger* plaintiffs did not need to allege they were actually deceived as a result of the allegedly deceptive practice (here, the prescription requirement). *Id.* at 295 ("Kucharski-Berger need not establish that she was misled by Hill's . . . ."). Thus, while the Kansas court nominally required a showing of "causation," it fell far short of requiring allegations plausibly showing that the plaintiff was injured as a direct result of the defendant's unlawful conduct, as required under the MMPA and the federal pleading standards.

## II. The District Court Correctly Determined that the Amended Complaint Fails to State a Civil Conspiracy Claim Under Missouri Law

Under Missouri common law, a claim for civil conspiracy requires a plaintiff to show: (1) two or more persons; (2) with an unlawful objective; (3) after a meeting of the minds; (4) committed an act in furtherance of the conspiracy; and (5) the plaintiff was thereby damaged. *See Aguilar v. PNC Bank, N.A.*, 853 F.3d

32

390, 402-03 (8th Cir. 2017) (citing *Mackey v. Mackey*, 914 S.W.2d 48, 50 (Mo. Ct. App. 1996)).

To state a claim for conspiracy, a plaintiff must allege facts with "heft," "plausibly suggesting (not merely consistent with) agreement." *Twombly*, 550 U.S. at 557; *see Quintero Cmty. Ass'n Inc. v. FDIC*, 792 F.3d 1002, 1011 (8th Cir. 2015) (applying *Twombly*'s principles to state-law civil conspiracy claims); *Cridlebaugh*, 2012 U.S. Dist. LEXIS 170034, at *5-6 (dismissing Missouri civil conspiracy claim and explaining that "*Iqbal* and *Twombly* require Plaintiff to plead facts sufficient to show more than the mere possibility that there was a meeting of the minds"). Additionally, Plaintiffs must plead their conspiracy claim with particularity because the underlying unlawful acts they allege Defendants committed — supposedly "deceiving pet owners" through a "deceptive scheme" to use a "prescription requirement" in the "fraudulent sale of Prescription Pet Food" (J App. 16, ¶ 7; R. Doc. 43, at 3; J App. 27-28, ¶ 41; R. Doc. 43, at 14-15; J App. 42, ¶ 87; R. Doc. 43, at 29) — sound in fraud. *See, e.g.*, *Siegel v. Deutsche Bank Nat. Tr. Co.*, 409 F. App'x 975, 976 (8th Cir. 2011) (affirming dismissal of state-law civil conspiracy claims on the ground that plaintiffs "had not established their state common-law fraud and civil conspiracy claims with sufficient particularity, as required under Rule 9(b)"); *Arnold*, 2012 U.S. Dist. LEXIS 58512, at *29

Appellate Case: 22-1796    Page: 43    Date Filed: 07/01/2022 Entry ID: 5173534

(dismissing conspiracy to commit fraud claim because the allegations did not satisfy Rule 9(b)).

As Plaintiffs acknowledge, a claim for civil conspiracy is not a standalone cause of action. *See* Br. 43 (citing *W. Blue Print Co, LLC v. Roberts*, 367 S.W.3d 7, 22 (Mo. banc 2012)). If the "tortious acts alleged as elements of a civil conspiracy claim fail to state a cause of action, then the conspiracy claim fails as well." *Oak Bluff Partners, Inc. v. Meyer*, 3 S.W.3d 777, 781 (Mo. banc 1999). Here, Plaintiffs' civil conspiracy claim is rooted in allegedly tortious violations of the MMPA. *See* J App. 42-43, ¶¶ 87-88; R. Doc. 43, at 29-30; Br. 44. Because the Amended Complaint fails to state an MMPA claim (for the reasons explained above), the civil conspiracy claim likewise fails. The district court correctly dismissed Plaintiffs' civil conspiracy claim on this ground. *See* Add. 9; R. Doc. 83, at 9.

Separately, Plaintiffs' civil conspiracy claim fails for the additional reason that the Amended Complaint fails to allege a plausible conspiracy. As the district court correctly determined, Plaintiffs "failed to allege sufficient facts to establish a meeting of the minds." Add. 9-10; R. Doc. 83, at 9-10; *see also Cridlebaugh*, 2012 U.S. Dist. LEXIS 170034, at *5-6 (dismissing claim where plaintiffs did not allege facts sufficient to "show more than the *mere possibility* that there was a meeting of the minds").

Appellate Case: 22-1796    Page: 44    Date Filed: 07/01/2022 Entry ID: 5173534

Contrary to Plaintiffs' argument, the Amended Complaint contains neither direct nor circumstantial evidence plausibly suggesting a conspiracy. The alleged "combination formed through PetSmart and Banfield" is not "direct" evidence of conspiracy. Br. 49. That argument misapprehends what direct evidence is. Direct evidence of agreement would be, for example, witness statements of participants admitting a conspiracy or a written conspiratorial agreement. *See, e.g.*, *Insulate SB, Inc.*, 797 F.3d at 544 (written exclusivity agreements); *In re Cattle Antitrust Litig.*, Civ. No. 19-1222, 2020 U.S. Dist. LEXIS 177526, at *12 (D. Minn. Sept. 28, 2020) (witness statements from employees of alleged conspirators). The Amended Complaint contains no such allegations of an explicit agreement. The only supposedly "direct evidence" cited by Plaintiffs is their assertion that PetSmart and Banfield formed a "combination." Br. 49. But Plaintiffs' actual allegations relating to that "combination" are that the companies formed a "strategic partnership" in 1994 to locate Banfield pet hospitals in PetSmart stores. J App. 27, ¶ 39; R. Doc. 43, at 14. That pet-hospital agreement is not alleged to be unlawful. Moreover, its timing is entirely disconnected from other events relating to the sale of Prescription Pet Food — it happened three decades after Hill's began marketing Prescription Pet Food, and a decade before Defendants entered the market.

Plaintiffs cite to *Interstate Circuit v. United States*, 306 U.S. 208 (1939), and *American Tobacco Co. v. United States*, 328 U.S. 781 (1946), for the proposition that no formal agreement is necessary to prove an unlawful conspiracy. *See* Br. 49-50. Although an explicit or formal agreement is not a prerequisite, this does not exempt Plaintiffs from the requirement to plead enough factual material to state a plausible claim for conspiracy. The Supreme Court spoke clearly on the pleading requirements for a conspiracy claim in *Twombly* (*see* 550 U.S. at 555-57), and Plaintiffs decisively fall short of this standard.

Plaintiffs' conclusory allegations of "agreement" or "conspiracy" (J App. 27-29, ¶¶ 41-47; R. Doc. 43, at 14-16) do not suffice to plead a plausible conspiracy. *See Warmington*, 998 F.3d at 796 ("The court is 'not bound to accept as true a legal conclusion couched as a factual allegation.'" (quoting *Iqbal*, 556 U.S. at 678)). Likewise, simply labeling Defendants' relationships with retailers and veterinary clinics as a "combination" (*e.g.*, J App. 27, ¶ 39; R. Doc. 43, at 14) does not render plausible Plaintiffs' conspiracy claim. *See Twombly*, 550 U.S. at 555 (requiring "more than labels and conclusions"). The Amended Complaint's relentless application of such labels and conclusions does not bring Plaintiffs any closer to pleading a plausible conspiracy. *See Insulate SB, Inc.*, 797 F.3d at 546 (affirming dismissal because complaint failed to allege concerted action notwithstanding the "repeated[] assert[ions]" of conspiracy).

Appellate Case: 22-1796    Page: 46    Date Filed: 07/01/2022 Entry ID: 5173534

As for Plaintiffs' allegations of supposedly "parallel conduct" (*see* Br. 49), they are similarly insufficient to state a claim for conspiracy. The Supreme Court has made clear that parallel business behavior alone does not plausibly suggest conspiracy. *Twombly*, 550 U.S. at 557; *see also Insulate SB, Inc.*, 797 F.3d at 544 ("Pleading only 'parallel conduct' or other conduct 'merely consistent with [an] agreement'" is insufficient (quoting *Twombly*, 550 U.S. at 557)). In addition to pleading "parallel conduct," a plaintiff must also identify some "further circumstance pointing toward a meeting of the minds." *Twombly*, 550 U.S. at 557; *see In re Cattle Antitrust Litig.*, 2020 U.S. Dist. LEXIS 177526, at *12 (requiring plaintiff to plead "plus factors" for conspiracy claim (citing *Blomkest Fertilizer, Inc. v. Potash Corp. of Sask.*, 203 F.3d 1028, 1033 (8th Cir. 2000) (en banc))).

The Amended Complaint falls short of even alleging plausible parallel conduct. Plaintiffs allege that, in the 1960s, Hill's first began selling Prescription Pet Food. J App. 22, ¶ 23; R. Doc. 43, at 9; J App. 27-28, ¶ 41; R. Doc. 43, at 14-15. Four decades later, in 2004, Mars/Royal Canin developed and introduced a competing line of Prescription Pet Food in response to the competitive threat of Hill's successful products. J App. 27-28, ¶ 41; R. Doc. 43, at 14-15. In 2005 or 2006, Purina responded by launching its own competing line of products. J App. 29, ¶¶ 45-46; R. Doc. 43, at 16. Conduct occurring approximately 40 years apart is not "unusual, lockstep . . . behavior." *See Park Irmat Drug Corp.*, 911 F.3d at 517

Appellate Case: 22-1796    Page: 47    Date Filed: 07/01/2022 Entry ID: 5173534

(quotation omitted). No plausible "meeting of the minds" or conspiracy can be drawn from this protracted timeline. *See id.* at 516-17 (affirming dismissal because complaint failed to plausibly plead parallel conduct where defendants' conduct — occurring six months apart — "lack[ed] temporal proximity").

Moreover, the Amended Complaint certainly lacks any additional factual allegations that could "nudge[]" Plaintiffs' contention that Defendants conspired to impose a prescription requirement "across the line from conceivable to plausible." *Twombly*, 550 U.S. at 570. The allegations that each Defendant imposed a prescription requirement for certain pet food products do not plausibly suggest a conspiracy because they "might also be equally attributable to lawful parallel conduct." *Nettles*, 2010 U.S. Dist. LEXIS 160945, at *9-10 (dismissing civil conspiracy claim because complaint did not allege the "wrongful acts were inconsistent with lawful parallel conduct"); *see also Park Irmat Drug Corp.*, 911 F.3d at 516 ("[T]he crucial question" is whether the alleged conduct "stem[s] from independent decision or from an agreement, tacit or express").

Plaintiffs contend that selling pet food using a "prescription requirement" is contrary to each Defendant's individual economic self-interest (Br. 50), but that assertion is belied by Plaintiffs' own allegations. The allegations show that Mars/Royal Canin and Purina each independently chose to enter a growing market to compete with Hill's Prescription Pet Food products. J App. 27-29, ¶¶ 41-42, 45;

Appellate Case: 22-1796    Page: 48    Date Filed: 07/01/2022 Entry ID: 5173534

R. Doc. 43, at 14-16. Far from irrational, this alleged conduct indicates *increased* competition for Prescription Pet Food, not a conspiracy. *See Twombly*, 550 U.S. at 567 (rejecting alleged conspiracy in face of "an obvious alternative explanation" for defendants' conduct); *Park Irmat Drug Corp. v. Express Scripts Holding Co.*, 310 F. Supp. 3d 1002, 1014 (E.D. Mo. 2018) (explaining an action contrary to self-interest is "conduct that would be irrational assuming that the defendant operated in a competitive market"). Moreover, the prescription requirement does not plausibly "risk[] irrevocable loss of pet owner trust" (Br. 50), as veterinary involvement in Prescription Pet Food protects pets and indeed FDA encourages it. *See Moore v. Mars Petcare US, Inc.*, 820 F. App'x 573, 576 (9th Cir. 2020) ("The FDA encourages the role of the vet in the prescription pet food process" and the continued use of prescription requirement, in light of FDA guidance, "do[es] not seem illogical").

Plaintiffs' implausible conspiracy includes the speculative premise that "Mars/Royal Canin," through its ownership of Banfield, can exclude competitors from PetSmart. *See* J App. 20, ¶ 17; R. Doc. 43, at 7; J App. 28-29, ¶¶ 44-46; R. Doc. 43, at 15-16. It is implausible to suggest Banfield — representing merely six percent of all veterinarians across the United States and present in only 18 of 31 PetSmart locations in Missouri (J App. 19-21, ¶¶ 15, 17, 20; R. Doc. 43, at 6-8) — can control which products PetSmart sells in its retail locations. The Amended

Complaint lacks factual allegations that would permit an inference of such control; the allegations of "control" are wholly conclusory. *See* J App. 19, ¶ 15; R. Doc. 43, at 6; J App. 25, ¶ 31; R. Doc. 43, at 12. Plaintiffs argue that the district court did not "draw all reasonable inferences" in Plaintiffs' favor because it found implausible that Banfield could control PetSmart's product offerings. *See* Br. 52. The district court was not required to "conjure up unpled allegations" to save Plaintiffs' conspiracy claim. *See Gregory*, 565 F.3d at 473. In rejecting Plaintiffs' tenuous theory, the district court was merely "draw[ing] on [its] own judicial experience and common sense" in assessing plausibility. *See Iqbal*, 556 U.S. at 679.

In any event, even assuming Mars/Royal Canin had the power to exclude Hill's and Purina's products from PetSmart, the Amended Complaint does not allege why allowing Purina and Hill's into PetSmart (via Banfield) would be "contrary to the independent interest of both Mars and Royal Canin." Br. 47. Mars has an ownership stake in Banfield (J App. 20, ¶ 17; R. Doc. 43, at 7), and Banfield offering expanded product offerings serves Banfield's and PetSmart's economic self-interest. Indeed, retailers routinely sell both products that they manufacture and competing products sold by other manufacturers — for example, grocery stores often sell both store-brand ketchup and Heinz-brand ketchup. Similarly, even if Mars/Royal Canin controlled PetSmart, the decision to allow

Appellate Case: 22-1796    Page: 50    Date Filed: 07/01/2022 Entry ID: 5173534

PetSmart to sell Royal Canin's Prescription Pet Food and competitors' Prescription Pet Food would reflect ordinary retail practices, not a conspiracy.

As with the MMPA claims, Plaintiffs' own allegations further undermine the plausibility of their conspiracy claim. Plaintiffs admit that there are Prescription Pet Food manufacturers and retailers who are *not* part of the alleged conspiracy and yet still "enforce" the prescription requirement. *See* J App. 19-20, ¶ 16; R. Doc. 43, at 6-7 (conceding there are "two smaller competitors" that sell through Chewy.com); J App. 23-24, ¶ 27; R. Doc. 43, at 10-11 (alleging Petco sells Prescription Pet Food); J App. 32, ¶ 55; R. Doc. 43, at 19 (alleging Plaintiff Brewer was prescribed and purchased Prescription Pet Food from veterinarians that Plaintiffs do not allege conspired). Plaintiffs fail to explain how the prescription requirement indicates a conspiracy among some manufacturers, but not others. Plaintiffs' allegations do nothing to obscure the obvious alternative explanation, reflective of rational, legal business behavior. *See Twombly*, 550 U.S. at 566-67 (considering "obvious alternative explanation" in assessing plausibility of conspiracy). The prescription requirement is simply a market response to the fact that veterinarians are in the best position to identify and select pet food appropriate for pets with certain health issues.

Plaintiffs' reliance on *Kucharski-Berger* (Br. 51) does not remedy their pleading deficiencies. In *Kucharksi-Berger*, the Kansas court of appeals did not

Appellate Case: 22-1796   Page: 51   Date Filed: 07/01/2022 Entry ID: 5173534

analyze the civil conspiracy claim under Rule 9(b), as required for the Missouri civil conspiracy claims. *See Arnold*, 2012 U.S. Dist. LEXIS 58512, at *29. Additionally, *Kucharski-Berger* involved very different allegations, parties, and claims. In *Kucharski-Berger*, the plaintiff asserted claims that Hill's — the original creator of Prescription Pet Food in the 1960s — restrained and monopolized trade. *See* 494 P.3d 283. Hill's is not a party in this action, and there are no allegations of monopolization.

On the conspiracy claim, the Ninth Circuit's decision in *Moore* is instructive. 820 F. App'x 573. There, the plaintiffs alleged an identical conspiracy involving the same pet food manufacturers and alleged co-conspirators to impose a prescription requirement. The Ninth Circuit found "Plaintiffs have not adequately pleaded that defendants — a collection of pet food manufacturers, veterinary clinic chains, and a pet goods retailer [ ] — engaged in an unlawful conspiracy." *Id.* at 575. More specifically, the Ninth Circuit found no direct evidence of a conspiracy alleged, the allegation of a "combination" was conclusory, and there were insufficient allegations beyond parallel business behavior to show a meeting of the minds. *Id.* at 575-76. The Ninth Circuit stated that the "main problem" with the plaintiffs' conspiracy theory was it failed to acknowledge other "players in the market." *Id.* at 576. The conspiracy alleged by Plaintiffs here suffers from precisely the same deficiencies.

In sum, the Amended Complaint lacks factual matter suggesting a plausible claim for civil conspiracy. The district court correctly dismissed the claim.

## CONCLUSION

For the reasons set forth above, this Court should affirm the district court's order dismissing Plaintiffs' Amended Complaint.

July 1, 2022                                     Respectfully submitted,

                                                /s/ *Christopher M. Curran*

Bryan A. Merryman                               Christopher M. Curran
WHITE & CASE LLP                                J. Frank Hogue
555 South Flower Street, Suite 2700             WHITE & CASE LLP
Los Angeles, CA 90071                           701 Thirteenth Street, N.W.
(213) 620-7700                                  Washington, D.C. 20005
bmerryman@whitecase.com                         (202) 626-3600
                                                ccurran@whitecase.com

Michael S. Hargens
HUSCH BLACKWELL LLP
4801 Main Street, Suite 1000
Kansas City, Missouri 64112
(816) 283-4636
Michael.hargens@huschblackwell.com

*Counsel for Appellant Nestlé Purina PetCare Company*

Jason M. Hans                                   Stephen D. Raber
GM Law PC                                       Joseph S. Bushur
1201 Walnut Street, Suite 2000                  WILLIAMS & CONNOLLY LLP
Kansas City, Missouri 64106                     680 Maine Avenue, S.W.
(816) 471-7700                                  Washington, D.C. 20024
jasonh@gmlawpc.com                              (202) 434-5000
                                                sraber@wc.com

*Counsel for Appellees Royal Canin U.S.A., Inc.*

Appellate Case: 22-1796     Page: 53     Date Filed: 07/01/2022 Entry ID: 5173534

## CERTIFICATE OF COMPLIANCE

This document complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B)(i) because, excluding the parts of the document exempted by Fed. R. App. P. 32(f), this document contains 9,867 words.

This document complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because this document has been prepared in a proportionally spaced typeface using Word in fourteen-point Times New Roman style font.

Pursuant to Eight Circuit Rule 28A(h), I also hereby certify that electronic files of this Brief has been submitted to the Clerk via the Court's CM/ECF system. The file has been scanned for viruses and is virus-free.

/s/ *Christopher M. Curran*
Christopher M. Curran

# CERTIFICATE OF SERVICE

I hereby certify that on July 1, 2022, I electronically filed the foregoing Appellees' Brief with the Clerk of the Court for the United States Court of Appeals for the Eighth Circuit by using the appellate CM/ECF system. I further certify that copies were sent to the following via electronic mail:

James P. Frickleton
BARTIMUS FRICKLETON
ROBERTSON RADER, P.C.
4000 W. 114th Street, Suite 310
Leawood, KS 66211
jimf@bflawfirm.com

Michael P. Morrill
POPE MCGLAMRY, P.C.
3391 Peachtree Road NE, Suite 300
Atlanta, GA 30326
mikemorrill@pmkm.com

Daniel R. Shulman
SHULMAN & BUSKE PLLC
126 North Third Street, Suite 402
Minneapolis, MN 55401
dan@shulmanbuske.com

*Counsel for Appellants*

/s/ *Christopher M. Curran*
Christopher M. Curran

Appellate Case: 22-1796    Page: 55    Date Filed: 07/01/2022 Entry ID: 5173534